## MANNING et al. v. GAGNE, Collector of Internal Revenue.
### No. 3507.

Circuit Court of Appeals, First Circuit.

Dec. 29, 1939.

John R. McLane, of Manchester, N. H. (McLane, Davis & Carleton, of Manchester, N. H., on the brief), for appellants.

Lee A. Jackson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and McLELLAN, District Judge.

McLELLAN, District Judge.

This appeal of the plaintiffs from a judgment for the defendant comes here with the District Judge's findings of fact, rulings of law and a transcript of the evidence. The crucial question is whether the finding that two transfers of stock by a taxpayer to his son, while in form sales, were in fact gifts, should stand. If sales, the taxpayer was entitled to a tax deduction. If gifts, no such deduction·was allowable, and the action can not be maintained. The trial was without jury, and in such cases, the "substantial evidence" rule no longer applies. By virtue of the Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c, the applicable test is whether having due regard to the opportunity of the trial court to judge of the credibility of witnesses, the finding was "clearly erroneous". Rule 52(a).

There are some facts which are not disputed or which are so amply supported by the reported evidence that they may be re-garded as established. These we state at the outset.

The original plaintiff, Frank P. Carpenter, hereafter called the taxpayer, died after suit was brought and the appellants, executors of his estate, became plaintiffs. The defendant is the Collector of Internal Revenue in New Hampshire by whom the taxes here involved were collected from the taxpayer. Mr. Carpenter's income taxes for the years 1932 and 1933 are here involved.

Prior to the December 1932 transaction about to be described, the taxpayer had owned for many years 4,000 shares of the 6 per cent preferred capital stock of the Brown Company. He and his family and the Brown family owned practically all the corporate stock, the Carpenters holding the preferred and the Browns the common stock. The two families had maintained very close family relations for many years. The market value of the Brown Company stock here involved was $3 a share in December, 1932, and $7 a share in 1933. The taxpayer had paid much more than $7 a share for the stock and he wanted to establish losses for tax purposes. To quote findings by the District Judge, the correctness of which is clear and with which the plaintiffs find no fault, 27 F.Supp. 286, 287:

"The stock had deteriorated in value and he wished to take a loss on account of 2,000 shares of the stock in his income tax return for the year 1932. On December 13, 1932, he consulted a lawyer as to a possible method of procedure. He was advised that R. L. Day Company, a reliable brokerage firm in Boston, held weekly auction sales of stock and that a sale might be made through this company. In accordance with the suggestion of counsel arrangements were made to place 2,000 shares of the Brown Company stock on sale. Frank P. Carpenter and [his son] Aretas B. Carpenter went to Boston and made arrangements for the sale and Aretas B. Carpenter left an order for the purchase of this stock at the market price. The transaction herein referred to as a sale was carried out according to the arrangements. The auction was held December 21, 1932, and the stock was struck off to Aretas B. Carpenter for $3 per share. R. L. Day & Company made return of the sale to Frank P. Carpenter crediting him with $6,000 proceeds of the sale and charging him $100 commission and revenue stamps amounting to $120, sending

him a check for the balance. At the same time Aretas B. Carpenter was notified of the purchase of 2,000 shares of Brown Company 6 per cent preferred stock for $6,000 plus a charge of $100 commission. Aretas B. Carpenter sent his check for $6,100 in the morning of December 22, 1932.

"Later in the same day he told his father that he had mailed his check for the stock and thereupon Frank P. Carpenter wrote his check for the same amount, $6,100, and laid it on his son's desk. In discussing the matter with the field agent, at the time of the audit of his return, Frank P. Carpenter stated that he wanted Aretas to have the stock. This check Aretas B. Carpenter cashed for his own account. Frank P. Carpenter took a loss on the sale of stock in his 1932 tax return of the difference between the stock at par (100) and $3 per share amounting to $194,221. He should have computed it on the difference between the cost price 95½ and $3.00.

"In 1933 the same procedure was followed. Frank P. Carpenter placed 2,000 shares of Brown Company stock with R. L. Day & Company for sale at its auction held on October 4, 1933. An order to buy at the market price was left by Aretas B. Carpenter. The arrangements were made by Frank P. Carpenter, Aretas B. Carpenter was not present. The stock sold for $7 per share. Return was made accompanied by a check to Frank P. Carpenter, a bill was sent to Aretas B. Carpenter, who sent his check to R. L. Day & Company for $14,100. Frank P. Carpenter reimbursed his son for the same amount. He took a loss on his income tax return of $186,221 computing the same on the basis of par as was done in 1932."

As to the statement that "Frank P. Carpenter reimbursed his son", a word may here be added. The evidence indisputably shows that strictly speaking it was not a reimbursement. The father paid the son before the latter's check to the brokers in the ordinary course of the mails had reached the payees. Thus it appears that there was no time during the 1932 or the 1933 transaction when the son was out of pocket. When the foregoing transactions took place, Aretas B. Carpenter was abundantly able to pay for the stock without assistance from anybody and without selling or encumbering any of his property.

In his income tax return for the year 1932 Mr. Carpenter, the taxpayer, claimed a deduction of $194,221 as a capital loss resulting from the transfer in December, 1932 (which was called a "sale") of the stock heretofore mentioned. In his return for 1933 the taxpayer claimed a deduction of $186,221 as a capital loss upon the same theory in connection with the transfer of stock to his son in October, 1933. Both deductions were disallowed by the Commissioner who in November 1935 assessed deficiency taxes of $29,401.16 for 1932 and $5,394.82 for 1933. Having paid these deficiency taxes November 15, 1935, after filing the requisite claims for refund which were disallowed by the Commissioner, the present action was brought.

Such are the undisputed facts which are not attacked and which are established by the District Judge's findings supported by evidence or by the evidence itself. The findings about which the plaintiffs complain are here set forth in the District Judge's words:

"I find that it was the purpose and intention of Frank P. Carpenter to make a transfer of the stock in question in such a manner as to make it appear that he was entitled to a loss on its sale without transferring it outside the members of his own family and that while in form a sale, in fact, it was a gift from Frank P. Carpenter to his son Aretas B. Carpenter.

"The different steps taken were carried out as a single transaction in accordance with the purpose and intention of the taxpayer and it seems unimportant as to whether his son knew in advance of his father's intentions.

"I find that Frank P. Carpenter did not sustain a deductible loss by reason of his transactions within the provisions of the Revenue Act of 1932, c. 209, § 23 [26 U. S.C.A. § 23]."

In their attack upon these findings the plaintiffs urge that Commissioner v. Behan, 2 Cir., 90 F.2d 609, is controlling. It is unnecessary here to state the facts there appearing or to point out in detail how they differ from the facts established in the case at bar. It is enough to say that in the Behan case the question was not whether a finding of a gift as opposed to a sale should be affirmed. Rather it was whether a finding of a sale was supported by no substantial evidence and such finding should be set aside. And it was not set aside. We are not called upon here to decide whether there was substantial evidence warranting findings by the Judge different from those which he made but only whether his findings are

clearly erroneous within Rule 52(a) of the Federal Rules of Civil Procedure. Nor do we think that upon the facts here appearing the judgment in the case at bar should be reversed by reason of anything appearing in Madeira v. Commissioner, 3 Cir., 98 F.2d 556. We are concerned here with what the District Judge was warranted in finding that the parties did. The fact that they called the transaction a sale is not controlling. That the taxpayer transferred the legal title to the stock and that there were no strings upon such transfer may be assumed without affecting the correctness of the conclusion of fact or of law that the taxpayer made no sale and suffered no deductible loss. In each year there was in effect a single transaction. In the course of that transaction there was no instant when the so-called buyer was out a single penny. After the transaction began and before it ended the "buyer" mailed his check to the broker, and on the evidence, before the stock was paid for, the seller paid the buyer the exact "purchase price". The upshot of each transaction was that the taxpayer's son got the stock and the taxpayer got nothing for it. A finding that the son did not "buy" the stock when in effect he received the purchase price from the seller and turned it over to the "seller's" broker was to say the least justified. We are not called upon to decide whether a transaction otherwise a sale loses its character as such because at some former time the money paid by the purchaser was given to him by the seller or to decide as a matter of law on the facts appearing in the record, it should be ruled that a gift, not a sale, occurred. The District Judge's findings here attacked were not clearly erroneous and they must stand.

We discover no reversible error in connection with the granting by the trial judge of various requests for rulings of law submitted by the defendant. The legal conclusion that the action can not be maintained was required by the finding that no sale of his stock was made by the taxpayer.

The judgment of the District Court is affirmed.

MAGRUDER, Circuit Judge.

I concur in the foregoing opinion and judgment, but there is some doubt in my mind whether the trial judge's conclusion, on the undisputed subsidiary facts, that the transaction was a gift and not a sale, is a "finding of fact" within the meaning of Rule 52. The opinion of the court assumes that it is, and sustains the finding on the ground that it is not "clearly erroneous". Whether a conclusion of fact or of law, I think it should be sustained because it was clearly right.

It must be taken as a fact that from the start the father intended that his son should get the stock at no cost, though he carried the transaction through in the form of a sale so as to be able to claim a tax loss. As the District Judge put it: "I cannot help reaching the conclusion that the instant transactions were conducted with the purpose and intention of retaining the family ownership of the stock without any contribution from the son and that that purpose was accomplished through the medium of a purported sale with the idea of establishing the market value of the stock." The District Judge was right, in my opinion, in holding that it is "unimportant as to whether his son knew in advance of his father's intentions". Assuming that the son initially viewed the transaction as a purchase, the court's opinion points out that he had not completed payment for the stock at the time the father tendered his check for the amount of the purchase price. At that time he could have refused the offer of a gift. But the son having accepted it, the father thereby consummated his original purpose of transferring the stock to the son without cost to the latter. Under the circumstances the legal consequences of this transaction, at least so far as they affect the question whether the father, the putative donor, has established a deductible "loss", ought to be determined by the intention of the father, as the District Judge held.

The statute does not use the words "sale" or "gift", but speaks of "losses". Judicial decisions have established that a "loss" may be established by a bona fide sale, not by a gift. The transaction here must be viewed in its entirety, and so viewed is no doubt sui generis. But it seems to me that the transaction more nearly resembles an ordinary gift than it does a sale, and hence that it falls outside the scope of the privilege extended to the taxpayer to take a deduction for "losses".