**COMMISSIONER OF INTERNAL REVE-
NUE v. WINSLOW.**

No. 3521.

Circuit Court of Appeals, First Circuit.

July 10, 1940.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner.

C. Clifton Owens, of Boston, Mass., for Winslow.

Before MAGRUDER and MAHONEY, Circuit Judges, and FORD, District Judge.

MAHONEY, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals (Winslow v. Commissioner of Int. Rev., 39 B.T.A. 373), and involves income taxes for the year 1934. The Commissioner of Internal Revenue, in determining a deficiency, added to the income reported $2,353.32 of the amount received by the taxpayer under a life insurance contract.

The question before the Board was how much of the $2,581.40 which respondent received from the Equitable Life Assurance Society of the United States in 1934, under the contract executed between the Society and respondent's father in 1904, was "received under a life insurance contract paid by reason of the death of the insured" within the meaning of Section 22(b) (1)

of the Revenue Act of 1934.[1] The Board decided that the instalment payment of $2,000 provided by the life insurance contract was exempt from tax under Section 22(b) (1), and that the additional sum of $581.40 was properly taxable.

The taxpayer concedes the excess of $581.40 over the $2,000 instalment of the face amount of the policy is properly taxable, since it was not paid under the contract with the assured but is "an excess interest dividend" out of the earnings of the Society. It was not received solely by reason of the death of the insured and is not exempt under the terms of the contract. But there remains the question whether the $2,000 was received under a life insurance contract paid by reason of the death of the assured and was exempt from tax within the meaning of the statute.

The facts were stipulated before the Board of Tax Appeals and are as follows:

The taxpayer, a resident of Boston, Massachusetts, was the beneficiary of a contract or policy issued to his father by the Equitable Life Assurance Society of the United States, effective November 12, 1904. The policy and application therefor constituted the entire life insurance contract between the Society and the assured. By its terms the Society, in consideration of the payment of an annual premium of $2,569.44, agreed to pay the designated beneficiary, his executors, administrators or assigns, if the beneficiary should survive the assured, $100,000 in 50 instalments of $2,000 each, the first to be paid upon receipt of proof of death. Should the assured survive the beneficiary the Society was to make the payments to the executors, administrators, or assigns of the assured.

The assured in his application for the policy had directed the Society to "Insert noncommutable, nonassignable clause". As a result when the policy was issued there was stamped on its face the Society's agreement " * * * neither to commute or cash any of the said instalments or make advance payments whatever thereon, nor to recognize any assignment or hypotheca-

[1] Revenue Act of 1934, 48 Stat. 687, 26 U.S.C.A.Int.Rev.Acts, page 670.
Gross Income * * *
(b) Exclusions from Gross Income.— The following items shall not be included in gross income and shall be exempt from taxation under this title:

(1) Life Insurance.—Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

tion of this contract or any part thereof, or interest therein, without the written concurrence of the Assured, except as required by law."

The assured died on June 18, 1917, without having concurred in any changes in the contract and the Society made no change therein. The Board, as a result of a stipulation, found as a fact "that the commutation on the date of death of 50 annual instalments of $2,000 each would be $53,000".

After the death of the assured, the policy was surrendered to the Society and the Society issued to the respondent beneficiary a so-called bond dated July 9, 1917, agreeing to pay him, his executors, administrators, or assigns, $100,000 in 50 equal annual instalments of $2,000. The bond provided further:

"These Instalments are based upon an assumed rate of interest of 3% per annum. If a higher average annual rate shall be earned by the Society, the amount of the Instalments may be increased on any anniversary by an excess interest dividend as determined and apportioned by the Society.

"No assignment or hypothecation of the Instalments payable hereunder will be recognized by the Society.

"If the Beneficiary should die before all of the aforesaid Instalments have been paid, such unpaid Instalments may be commuted on the basis of 3% per annum compound interest and paid in a single sum. Under no other circumstances will the Society commute or anticipate instalments."

The respondent taxpayer received the first instalment of $2,000 during 1917, and similar instalments, together with an additional amount of several hundred dollars in each succeeding year. Prior to 1934, the year involved in this appeal, the taxpayer had received from the Society the aggregate amount of $45,473.40 representing 17 annual payments of $2,000 each, plus $11,473.40 being the total of the additional amounts paid each year. The taxpayer reported no income from this source in his income tax returns for such years under the then construction of the Commissioner of Internal Revenue that such amounts were not subject to tax.

During 1934 the respondent taxpayer received $2,581.40 from the Society and did not include the same in his individual income tax return for that year. The Commissioner determined under Article 22(b) (1) of Treasury Regulations 86[2] that the commuted value of the $100,000 to be paid

---

2 Article 22 (b) (1) 1. Life insurance—Amounts paid by reason of the death of the insured.—The proceeds of life insurance policies, paid by reason of the death of an insured to his estate or to any beneficiary (individual, partnership, or corporation, but not a transferee for valuable consideration), directly or in trust, are excluded from the gross income of the beneficiary. While it is immaterial whether the proceeds of a life insurance policy payable upon the death of the insured are paid to the beneficiary in a single sum or in installments, only the amount paid solely by reason of the death of the insured is exempted. The amount exempted is the amount payable had the insured or the beneficiary not elected to exercise an option to receive the proceeds of the policy or any part thereof at a later date or dates. If the policy provides no option for payment upon the death of the insured, or provides only for payments in installments, there is exempted only the amount which the insurance company would have paid immediately after the death of the insured had the policy not provided for payment at a later date or dates. Any increment thereto is taxable. In any mode of settlement the portion of each distribution which is to be so included in gross income shall be determined as follows:

(a) Proceeds held by the insurer.—If the proceeds are held by the insurer under an agreement (whether with the insured or with a beneficiary) to distribute either the increment to such proceeds currently, or the proceeds and increment in equal installments until both are exhausted, there shall be included in gross income, the increment so paid to the beneficiary, or so credited to the fund in each year by the insurer.

(b) Proceeds payable in installments for a fixed number of years—or for a fixed number of years and for continued life.—If the proceeds are payable in installments for a fixed number of years, or for a fixed number of years and for continued life, the amount that would have been payable by the insurance company immediately upon the death of the insured (if payment at a later date had not been provided for) is to be divided by the total number of installments payable over the fixed number of years for which payment is to be made, and the quotient represents the portion of each installment to be excluded from gross income. The amount of each installment in excess of such excluded portion is to be included in

in 50 annual instalments of $2,000 each, was $53,000; that $53,000 is the total amount under the contract exempt from tax by said Section 22(b) (1); that since $45,473.40 had been received in prior years and untaxed there was only the difference of $7,526.60 receivable in 1934 and future years still subject to the exemption; that the exemption of this $7,526.60 must be spread ratably over the remaining 33 years of periodic payments, including 1934; and that hence only the pro rata amount thereof of $228.08 is the exempt portion of the $2,581.40 received in 1934. The Commissioner added $2,353.32 to the income reported by the taxpayer representing the difference between the total payment received in 1934 of $2,581.40 and the only portion thereof he decided to be nontaxable, $228.08, and determined a deficiency in tax as a result thereof.

The taxpayer appealed to the Board of Tax Appeals from the proposed additional assessment. The Board after carefully reviewing the legislative history of the section of law involved decided that the instalment payment of $2,000 as provided by the life insurance contract was exempt from tax under said Section 22(b) (1) but that the additional sum of $581.40 was properly taxable. It entered its decision in accordance therewith. The Commissioner filed this petition for review.

He contends that as the commuted value of the policy at the date of death of the assured was $53,000, this is the only part of the policy which is life insurance; that in electing to have his son paid in instal-

ments the assured was thereby purchasing an annuity rather than life insurance; and that the Board of Tax Appeals was in error in holding that all the guaranteed $2,-000 which respondent received in 1934 under the contract between the respondent's father and the Society, and under the substituted bond, was life insurance paid the respondent by reason of the death of his father, the assured. We do not agree with the contention of the Commissioner.

Mr. Winslow, the respondent's father, applied for and received what was denominated a "life insurance" policy for $100,-000 payable in 50 annual instalments of $2,-000 each. It was agreed that the amount which would have been payable upon the death of the assured, except for the terms and conditions contained in the policy, was $53,000. Had the assured lived until 1924, at which time the policy would have been fully paid up, he would have been entitled under Section VIII to a dividend and any one of nine options providing for cashing the policy at its "full value" or continuing it at its paid-up life insurance value as found by the table in Section VII of the policy. The "full" or "paid-up life assurance" cash value of this policy as shown by this table was only $33,973, and that this was based on $53,000 of life insurance is shown by the statement in the policy immediately above the surrender value that "The loans, cash and paid-up surrender value stated in the following table apply to a policy for $1,000. As this contract is for $100,000 in 50 instalments, the cash or loan * * * or paid-up life assurance * * *

gross income. For example, if, at the insured's death, $1,000 would have been payable in a single installment, but 10 equal annual payments are made in lieu thereof, the portion of the installment received during any taxable year to be excluded from gross income is $100 ($1,-000 divided by 10). Any amount received as an installment in excess of $100 is to be included in gross income.

(c) Proceeds payable in installments during the life of the beneficiary.—If the proceeds are payable in installments during the life of the beneficiary the amount of each installment that is to be included in gross income will be determined as in paragraph (b), above, except that the number of years to be used in the specified computation will be determined by the life expectancy of the beneficiary, as calculated by the table of mortality used by the particular insurance company in determining the amount of the annuity.

If a mode of settlement has been in effect prior to the first taxable year which begins after December 31, 1933, the entire amount received and excluded from gross income in such prior years shall be deducted from the proceeds payable upon the death of the insured. The remainder shall be divided by the number of installments unpaid at the beginning of such taxable year (whether over the remaining portion of the fixed period or over the life expectancy as of that date, depending on the mode of settlement adopted); and that quotient shall be the excludible portion of each installment. As soon as the aggregate of the amounts received and excluded from gross income under the methods of computation provided for in this article equals the amount of the proceeds payable upon the death of the insured, the entire amount received thereafter in each taxable year must be included in gross income.

available in any year, will be fifty-three times the amount stated in the table for that year".

Further demonstration is provided by the terms of Section IX of the policy providing alternative methods of settlement at maturity of the policy. Section IX(a) provided that at any time before maturity, the assured could elect to have the "equivalent of the amount assured" paid "in any designated number of equal annual instalments (which number may be subsequently changed if desired), with or without the privilege of commutation" according to the table which followed. The assured selected the last alternative, payment in 50 annual instalments of $37.73 per $1,000 of insurance, thus conclusively showing that the amount of insurance was only $53,000 i. e., $53,000 is the present cash value of $100,000 spread equally over 50 years. The respondent received $100,000 if and only if the payments were spread out over 50 years in equal instalments. For example, had the assured chosen payment in 20 annual instalments of $65.26 per $1000 of insurance, the respondent would only have received $69,165.60; had he chosen payment in 5 annual instalments, the respondent would have been entitled only to $55,180. The assured could have provided for such payment, even of this policy, at any time before maturity. If the assured had allowed the respondent the privilege of commutation, no matter which of the alternatives the assured had selected, respondent could never have been paid more than $53,000 by commutation at the death of the assured. Furthermore, Section IX (b) of the policy provides for the conversion of "the proceeds of this policy" at its maturity, i. e., $53,000, into an annuity payable during the lifetime of the beneficiary in accordance with the Society's annuity tables, thus allowing, in the same section, an indefinite life annuity settlement instead of the fixed term annuity provided for in Section IX(a).

Thus, it is apparent that this policy is not a policy for $100,000 life insurance payable in 50 instalments but a policy for $53,000 life insurance payable as a 50 year annuity in equal payments of $2,000. That it was labelled a life insurance contract for $100,000 is not controlling since in determining tax liability, courts must look through form to fact and substance. Helvering v. Tex-Penn Co., 1937, 300 U.S. 481, 492, 493, 57 S.Ct. 569, 81

L.Ed. 755; Aluminum Castings Co. v. Routzahn, 1930, 282 U.S. 92, 99, 51 S.Ct. 11, 75 L.Ed. 234; Manning v. Gagne, 1 Cir. 1939, 108 F.2d 718, 721; Helvering v. Richmond, F. & P. R. Co., 4 Cir.1937, 90 F.2d 971, 973. Nor can the fact that the policy was made noncommutable and that this particular option was exercised at the time of application for the policy and was never changed alter the essential nature of the contract.

However, amounts paid under such a life insurance policy are exempted from inclusion in the gross income by Section 22(b) (1) of the Revenue Act of 1934, 48 Stat. 687. The language of this section— "amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise"—is to be interpreted in its ordinary and natural meaning. Helvering v. San Joaquin Co., 1936, 297 U.S. 496, 56 S. Ct. 569, 80 L.Ed. 824.

It is not clear from an examination of the words of the statute whether amounts received under a life insurance contract payable in the form of an annuity are exempt from inclusion in the gross income. Section 22(b) (2) of the same statute provides for a new method of taxing annuities "under an annuity or endowment contract" but it is far from clear whether an annuity received under a life insurance contract is included in such taxation or is exempted by Section 22(b) (1). In such circumstances it is proper to consider the reports of the committees of the Congress in charge of the legislation in order to discover the legislative intention. Binns v. United States, 1904, 194 U.S. 486, 495, 24 S.Ct. 816, 48 L.Ed. 1087; Holy Trinity Church v. United States, 1892, 143 U.S. 457, 464, 12 S.Ct. 511, 36 L.Ed. 226; Blake v. National Banks, 1874, 23 Wall. 307, 23 L.Ed. 119; Bankers' Trust Co. v. Bowers, 2 Cir.1923, 295 F. 89, 96, 31 A.L. R. 922. See Caminetti v. United States, 1917, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L. Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168.

Prior to 1926 "The proceeds of life insurance policies paid upon the death of the insured" were exempt, e. g., Revenue Act of 1924, § 213(b) (1), 43 Stat. 267, 26 U. S.C.A.Int.Rev.Acts, page 19. The Revenue Act of 1926, § 213(b) (1), 44 Stat. 24, 26 U.S.C.A.Int.Rev.Acts, page 163, reads in part as follows:

"(b) The term 'gross income' does not include the following items, which shall be exempt from taxation under this title:

"(1) Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or in installments (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income)."

It is clear that Congress intended that the words "amounts received under a life insurance contract paid by reason of the death of the insured" in the 1926 Act and the words "proceeds of life insurance policies paid upon the death of the insured" in the former statute should have the same meaning and were to be exempt from taxation. To insure the exemption in the case of instalments under the Act, a plain provision was inserted covering their exemption. See H.R.Rep. No. 356, 69th Cong., 1st Sess. (1926) 33.

The Revenue Act of 1934, § 22(b) (1), 48 Stat. 687, 26 U.S.C.A. Int.Rev.Acts, p. 670, made but one change from the language used in the 1926 Act. It employs the words "or otherwise" in place of "or in instalments". The explanation of this change is found in H.R.Rep. No. 704, 73d Cong., 2d Sess. (1934) 21. This report is as follows:

"Section 22(b) (1). Life Insurance: This change makes it clear that the proceeds of a life-insurance policy payable by reason of the death of the insured in the form of an annuity are not includible in gross income."

The Senate Finance Committee in its report, Sen.Rep. No. 558, 73d Cong., 2d Sess. (1934) 23, says:

"Section 22(b) (1). Life Insurance. This change, made by the House, makes it clear that the proceeds of a life-insurance policy payable by reason of the death of the insured in the form of an annuity are not includible in gross income. Your Committee made no change in this section of the House bill."

Congress has been consistent in all its Acts in exempting from taxation amounts received in settlement of death claims. It draws no distinction whether such amounts are paid in instalments or as annuities. Accepting the analysis of the Commissioner that the policy in question is a life insurance policy for $53,000 principal value payable as an annuity, rather than one for $100,000 payable in 50 instalments, it still falls precisely within the language of Section 22(b) (1) of the Revenue Act of 1934 according to the legislative intention as set forth in the reports by the Congressional committees. Thus, each $2,000 instalment paid to the respondent, even though it be considered as part annuity, must be excluded from the gross income.

The Commissioner of Internal Revenue has authority to prescribe rules and regulations to administer the Revenue Act of 1934, under the power conferred upon him by Section 62 thereof. § 62, 48 Stat. 700, 26 U.S.C.A. Internal Revenue Acts, page 687. Any regulation consistent with the law is valid and its promulgation a proper exercise of the power conferred upon him, but it does not empower him to change or alter the law.

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law * * * but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." Manhattan Co. v. Commissioner, 1936, 297 U.S. 129, 134, 56 S. Ct. 397, 400, 80 L.Ed. 528; Cf. Miller v. United States, 1935, 294 U.S. 435, 439, 55 S.Ct. 440, 79 L.Ed. 977.

"* * * although it is true that where an Act uses ambiguous terms or is of doubtful construction, a clarifying regulation or one indicating the method of an Act's application to specific cases is to be given weight by the courts, the interpretation of a statute always remains the function of the judiciary. The regulation cannot change what the Act originally meant." Saks v. Higgins, D.C.S.D.N.Y.1939, 29 F. Supp. 996, 999; cf. Fresno Grape Products Corp. v. United States, Ct.Cls.1935, 11 F. Supp. 55, 59.

Article 22(b) (1) of Treasury Regulations 86, as sought to be applied by the Commissioner to the facts in this case, is contrary to the expressed intention of Congress and is invalid.

The decision of the Board of Tax Appeals is affirmed.