In the Matter of **QUAKERTOWN SHOP-PING CENTER, INC., Bankrupt.**

**No. 26272.**

United States District Court
E. D. Pennsylvania.
Sept. 8, 1965.

Wexler, Mulder & Weisman, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., Arnold Miller, U. S. Dept. of Justice, Washington, D. C., for defendant.

HIGGINBOTHAM, District Judge.

The several issues raised by this bankruptcy matter relate to a single question:

Is a notice of levy valid when served by the District Director of Internal Revenue on a Chapter XI [1] receiver without the prior permission of the bankruptcy court? I have concluded that the instant levy was improper under the circumstances.

## I.

### HISTORY OF THE CASE

This Court is asked to review a portion of the final Order of Distribution entered by a Referee in a bankruptcy proceeding. The reviewant, the Trustee in Bankruptcy of Electricon-Suburban, Inc., challenges the Referee's award to the District Director of Internal Revenue in the amount of $15,334.03 in taxes plus $4500.00 in interest, part of debt originally due Electricon as a creditor of the bankrupt estate of Quakertown Shopping Center, Inc. The total claim allowed against the Quakertown estate was $130,000 [2] plus a $34,913.15 dividend. The District Director's claim was satisfied out of the dividend.

On July 27, 1960, the United States served a notice of levy dated July 7, 1960, on the Quakertown receiver for $15,334.-03 taxes due. No application was made by the United States to the bankruptcy court before or after the levy for permission to attach the Quakertown receiver.

Electricon asked the Referee to restrain the District Director from proceeding with the levy and to show cause why he should not prove his tax claim in

1. This proceeding was initiated as an arrangement under Chapter XI of the Bankruptcy Act and was later converted into a bankruptcy. Electricon's bankruptcy proceedings also began with a voluntary petition for an arrangement under Chapter XI.

2. Electricon filed proof of claim for $139,669.26 (No. 8) on July 6, 1960, and an amended claim (No. 31) of $147,-794.26 on October 17, 1960.

the Electricon bankruptcy proceedings[3] in New Jersey, where the District Director had already filed proof of claim.

The Referee entered an order awarding the full amount of the tax claim to the District Director. Besides the $15,334.03 in taxes the Referee allowed the District Director $4500.00 in interest, an amount which Electricon contests here as non-allowable post-bankruptcy interest. The Referee ordered the remaining part of the $34,913.15 dividend from the Quakertown estate to go to the Electricon estate for administration and distribution by the Electricon bankruptcy court in New Jersey.

## II.

### EFFECT OF THE NOTICE OF LEVY

Both parties in the instant matter recognize that the notice of levy served by the District Director on the Quakertown receiver is valid only if it does not offend the Bankruptcy Act. The District Director argues that there has been compliance with the Act pursuant to the Treasury Department Regulation under § 6331 of the Internal Revenue Code of 1954,[4] § 301.6331–1(a) (3).

On the Finding that "income tax regulations have the force and effect of law when not in conflict with an express statutory provision," the Referee accepted the Government's view that an initially unsanctioned levy on funds *in custodia legis* pursuant to a tax regulation was permissible under the Bankruptcy Act.

Electricon challenges the levy as "a nullity because it was served on the Receiver in Chapter XI without the prior consent of the Bankruptcy Court."[5] Electricon argues that only a "consent first" rule is consistent with the Bankruptcy Court's exclusive jurisdiction in

bankruptcy cases and that to the extent that a Treasury Department regulation impinges upon that exclusive jurisdiction, the regulation is invalid.

### A. THE EFFECT OF TREASURY REGULATION 301.6331–1(a) (3).

The Government relies heavily on Reg. 301.6331–1(a) (3) as follows:

> During a bankruptcy proceeding in either a Federal or State Court the assets of the taxpayer are in general under control of the court in which such proceeding is pending. Taxes cannot be collected by levy upon assets in the custody of a court, whether or not such custody is incident to a bankruptcy or receivership proceeding, except where the proceeding has progressed to such a point that the levy would not interfere with the work of the court or where the court grants permission to levy.

■ The error in the Government's argument begins with the premise that administrative regulations are subject to none but express statutory provisions. The Court, in Alcoma Assoc. v. United States, 239 F.2d 365 (5th Cir. 1956) said that such regulations are subordinate to both statute and "other authoritative interpretations of the language [of a statute]." Thus if a tax regulation is construed to be in conflict with "authoritative interpretations" it cannot stand even though it is not at odds with express statutory language.

The District Director asserts that the regulation makes "non-interference" with the work of the Court an alternative legal basis to the seeking and receiving of permission to levy from the Bankruptcy Court.[6] In adapting this view,

3. Electricon's petition was filed on August 9, 1960. See Petition for Certificate of Review filed by Electricon-Suburban, Inc.

4. 26 U.S.C. § 6331.

5. Brief of Estate of Electricon-Suburban, Inc. See Certificate of Review, p. 10.

6. In my view, Electricon has successfully refuted the District Director's allegation

in pointing out that the non-interference regulation is applicable to those instances where "the Bankruptcy Court relinquishes its jurisdiction over assets but the receivership is now merely processing paperwork * * * i.e. Bell v. Roberts, 112 F.2d 585 (CCA 3–1940)." (See generally pp. 12 and 13 of Electricon's brief.) In these situations—and they are common—" * * * the proceeding has

the Referee sanctioned a "risk" procedure whereby after a levy is effected, the Trustee or taxpayer-creditor of the bankrupt can "ask the Court to decide the factual question of interference, and this is a 'risk' the District Director takes on proceeding in this manner." [7] By his construction of the regulation, the Referee thereby allowed on unwarranted intrusion on the prerogatives of the bankruptcy court.

■ Section 2(2) of the Bankruptcy Act [8] vests courts of bankruptcy with jurisdiction to:

> Allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against bankrupt estates; * * *.

Regulation 301.6331–1(a) (3) instructs Internal Revenue personnel to give deference to the special status of funds brought under the Court's jurisdiction; but the regulation, in the Referee's view, adds an opening for reaching funds in the Court's custody without the Court's permission, to wit, allows funds to be attached if there is no interference with the work of the Bankruptcy Court.

■ I cannot agree that a tax regulation can effect such an expansion. If the regulation is read as suggested, it will write into the relevant Tax Code Section 6331 [9] language not indicated there and will have an unjustified and significant impact on an entirely unrelated statutory scheme, the Bankruptcy Act.[10]

The United States Supreme Court has specifically limited treasury regulations so as to avoid such collisions. In United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394 (1957), the Supreme Court ruled invalid a treasury regulation which made an "attempted addition to the statute of something which is not there." At least as construed, Regulation 301.6331–1(a) (3) adds "something which is not there." [11]

■ Nor can the Referee's finding after the fact that if permission had been asked, it would have been granted be held to satisfy the requirements of the Bankruptcy Act. That would be akin to saying in a case of arrest without a warrant that if a warrant had been sought, it would have been issued. The reasons for the doctrine of *in custodia legis* in bankruptcy matters would be undermined if this patchwork procedure were condoned.

B. THE EFFECT OF THE DOCTRINE OF IN CUSTODIA LEGIS IN THE BANKRUPTCY ACT.

The District Director relied on Regulation 301.6331–1(a) (3) as having statutory effect superior to the common law *in custodia legis* doctrine. He argued:

> Thus, absent some conflicting and superior prohibition against levy on an indebtedness such as found here, the unambiguous statutory provision [Reg. 301.6331–1(a) (3)] governs and takes precedence over what

---

progressed to such a point that the levy would not interfere with the work of the Court. * * *"

7. Opinion and Order of Referee Bertram K. Wolfe, Civil No. 26272, p. 6.

8. 11 U.S.C. § 11(2).

9. Section 6331 of the 1954 Internal Revenue Code provides:
 (a) *Authority of Secretary or Delegate.*—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax * * * by levy upon all property and rights to property (except such prop-

erty as is exempt under section 6334) belonging to such person * * *.

10. It goes without saying, that since regulations cannot transcend the statutes under which they were promulgated, they certainly cannot have extra-statutory effect on non-tax law.

11. For the effect of tax regulations that go beyond or are in conflict with statutes, see also United States v. Whitney Land Co., 324 F.2d 33, 38 (8th Cir. 1963); Commissioner of Internal Revenue v. Winslow, 113 F.2d 418, 423, 133 A.L.R. 405 (1st Cir. 1946); In re Town Crier Bottling Co., 123 F.Supp. 588 (E.D.Mo., E.D.1953).

has been denominated a common law doctrine of *custodia legis*.[12]

By thus treating *in custodia legis* as an exclusively common law doctrine and Regulation 301.6331–1(a) (3) as a statute, the Government sought to mitigate the effect of the long held principle that funds in the custody of a court cannot be garnished or otherwise affected except by permission of that court.

 To be sure, the *in custodia legis* principle has its roots in the common law.[13] But an effective bankruptcy statute which did not incorporate the doctrine is inconceivable. Basic to the workability of the statutory scheme is the broad power of the Bankruptcy Court to sequester the assets of the debtor and to oversee their distribution. Pursuant to this power the trustee of the bankrupt's estate, who is the agent of the Bankruptcy Court, is "vested by operation of law with the title of the bankrupt." [14] as of the filing date of the petition. Thus by express statutory provision, the bankrupt's entire estate is brought under the sole aegis of the court —*in custodia legis*.

 Any doubt as to the statutory incorporation of the doctrine of *in custodia legis* with all its attendant effects is dislodged by an examination of the language of the so-called strong-arm clause, Section 70, sub. c of the Bankruptcy Act.[15] Section 70, sub. c goes beyond the vesting of ordinary title; it gives the trustee in bankruptcy the superior status of most preferred creditor with rights above those of other creditors.[16] Funds in his possession as trustee for the Court are strictly guarded from interference:

> (c) The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor than holding a lien thereon by such proceedings, whether or not such a creditor actually exists.

The strong protective language of Section 70, sub. c not only incorporates the doctrine of *in custodia legis* by necessary implication; in its transfer to the trustee of almost all available defenses against the bankrupt's creditors, it spells out the doctrine in the most definite terms. When Section 70, sub. c is read in conjunction with still other parts of the Act giving the trustee such powers as the right to grant title to the property

---

12. Government statement quoted by Meyer E. Maurer, Esq., at Special Hearing before the Referee, April 22, 1964, N.T., p. 7.

13. 2 Steph.Comm. 74.

14. 11 U.S.C. § 110, sub. a, 70, sub. a Bankruptcy Act.

15. 11 U.S.C. § 110, sub. c.

16. The trustee is of course not given the status of bona fide purchaser or encumbrancer for value. Myers v. Matley, 318 U.S. 622, 755, 63 S.Ct. 780, 87 L. Ed. 1043 (1943); Commercial Credit Co., Inc. v. Davidson, 112 F.2d 54 (5th Cir. 1940); but such rights would defeat, not carry out the purposes of the Bankruptcy Act. The trustee derives such rights as a creditor of the bankrupt would have who had a judgment, attachment, execution, or other equitable lien. Matter of I. S. Remson Mfg. Co., 232 F. 594 (2d Cir., 1916). The goal of an equitable distribution to the creditors of the assets of the bankrupt would be defeated if the trustee were deemed a bona fide purchaser thus enabling him to defeat liabilities arising from the duty to return property fraudulently obtained by the bankrupt, and from the duty to account for trust funds and the like. (See 14 Collier § 70.52 [1] (14th ed.).

of a bankrupt estate,[17] the statutory status of the doctrine of *in custodia legis* cannot be doubted.

■ It follows that the Bankruptcy Act by incorporating the doctrine of *in custodia legis* has raised that doctrine above its original common law standing and given it statutory significance. Any action taken pursuant to Treasury Department regulation, therefore, must not conflict with the requirements of the doctrine.

## C. THE REQUIREMENTS OF THE DOCTRINE OF IN CUSTODIA LEGIS.

■ Case law is instructive on the actual consequences of the doctrine of *in custodia legis*. The doctrine's chief effect is realized in the immunity from garnishment it gives to funds held by the court. The reasons for this immunity are several. The "endless embarrassment and interference" with the Court's administration of estates would seriously impede the efficiency of the Bankruptcy Act. See: In re Chakos, 36 F.2d 776, 777 (D.C.W.D.Wis., 1930). Comity between federal and state courts would be upset if the intended exclusive jurisdiction of the one were nevertheless subject to the otherwise legitimate processes of the other. See National Automatic Tool Co. v. Goldie, 27 F.Supp. 399 (D.C.D.Minn., 1939); Cowart v. W. E. Caldwell Co., 134 Ga. 544, 68 S.E. 500, 30 L.R.A.,N.S., 720 (1910). It is clear that the overall purposes of the Bankruptcy Act require respect for the policies served by the *in custodia legis* doctrine.

In re Kranich, 182 F. 849, decided in this Circuit in 1910, set law still followed in this area. The District Court allowed an attachment of funds in the custody of the law pursuant to Bankruptcy proceedings but emphasized that, " * * * I repeat * * * the allowance must be accepted as purely ex gratia." Although

holding to the view that an "attachment execution * * * could not be enforced against the objection of the trustee," the court allowed the attachment because the trustee was "not complaining, and does not oppose the order now asked for."

Even though courts such as the Kranich court, supra, have allowed attachments of funds in custody, none has done so without prior permission or after special circumstances. In re Argonaut Shoe Co., 187 F. 784 (9th Cir. 1911), however, represents the refusal to allow any diminution of the Bankruptcy Court's authority over the bankrupt's estate. The issue in Argonaut as stated by the court was identical to that in the instant matter—"whether funds in the hands of a trustee in bankruptcy for the benefit of a creditor of the bankrupt's estate may be reached by garnishment proceedings after a dividend has been declared." The court held that only "express statutory authority" of which none was "found in the bankruptcy law" could grant the right to garnishee such funds. Argonaut cited an early opinion, Gilbert v. Quimby, 1 F. 111, making a distinction between ordinary property of a debtor and a dividend in the custody of a court. The latter, the Court held, was the property of the United States until paid to the debtor. This distinction is helpful for clarifying the attachment problem raised by the instant matter, since property technically not owned by a debtor at the time of attachment would, of course, not be subject to attachment by his creditors.

In the Matter of Eagle Frosted Foods Corp., 52 1 CCH ¶9295 (Ref.Dec.1952), the Court similarly could find no basis for the view that a Bankruptcy Court is even empowered to grant permission to levy:

It has long been decided and understood that funds in the custody of a

---

17. Sec. 70, sub. g, 11 U.S.C. § 110, sub. g provides:
 "The title to property of a bankrupt estate which has been sold, as herein provided, shall be conveyed to the purchaser by the trustee." Sec. 70, sub. e, 11 U.S.C. § 110, sub. e.

Bankruptcy Court are *in custodia legis,* and I have serious doubt that an agency of the United States [there, as here, the Internal Revenue Service] has the right to ask the Bankruptcy Court—any more than is given to any other creditor of one who files as a creditor in a bankruptcy proceeding—to recognize the claim of the United States and to give effect to it in the course of and as part of the bankruptcy proceedings. * * * No burden, in my opinion should be placed on a Bankruptcy Court otherwise than is envisioned by the Bankruptcy Act, certainly none that would delay the settlement of the bankruptcy proceeding.

Here, however, I am called upon to decide the validity of such an attachment only if no prior permission to attach is granted. Although the case law is divided as to whether the Bankruptcy Act gives any power whatsoever to a court to allow such attachments, I have found no case, nor has any been cited to me, holding that a creditor may attach funds held by a bankruptcy court without the prior permission of the Court.

Matter of Eagle Frosted Foods Corporation, supra, is emphatic on the necessity for prior permission. If such attachments are permissible at all, the Eagle Court said, they are "certainly not without the collector having first made the appropriate approach to the Bankruptcy Court and asked and obtained permission to be injected into the bankruptcy proceedings."

National Automatic Tool Co. v. Goldie, supra, similarly takes the view that prior permission is necessary for attachment. There also, a creditor of the bankrupt's creditor garnished a dividend, but, unlike the instant situation, the judge in that bankruptcy proceeding had in fact issued an order permitting garnishment pursuant to an application from the creditor. Even though the court in National Automatic Tool was also a federal court, thus eliminating the problem of comity, the district court there ruled that "without the permission of the bankruptcy court this court as a district court could do nothing which would tend to defeat or interfere with that court's jurisdiction in rem." 27 F.Supp. at 402. National Automatic Tool held that the garnishment could stand *because* the bankruptcy court had given permission.

This view represents the substantial trend of the case law in the field. Leading bankruptcy authorities concur. Collier says: "It is entirely clear that any suit to reach a declared dividend as by garnishment or attachment may be prosecuted only with the consent of the bankruptcy court," [18] and Remington similarly states: "Attachment or garnishment will not reach dividends in the hands of the trustee in bankruptcy * * not * * * at least without leave of the court. * * * " [19]

█ With so much authority for the view that prior permission is required for the release of funds in the custody of the bankruptcy court, I can find no reason for a district court judge to sanction the instant levy. I cannot agree that the courts would be burdened by requests for permission to levy [20] especially when, under the "risk" procedure sanctioned by the Referee, as much and possibly more time would be consumed in hearings and appeals.[21]

### III.

### POST-BANKRUPTCY INTEREST

█ United States v. Sullivan, 333 F.2d 100 (3rd Cir. 1964) relied on

---

18. 3 Colliers (14th Ed.) § 65.08.

19. 6 Remington 62891.

20. Referee's Opinion, p. 6.

21. The procedure used in this case appears to have done anything but promote efficiency and save time in the Quakertown bankruptcy proceedings. Quakertown's original petition dates from May 26, 1960. The order being reviewed here was entered November 4, 1964. Meanwhile the Quakertown estate cannot be distributed and closed and is accruing further expenses.

by the Referee holds that a levy transfers ownership "when validly invoked." A levy made on funds in the custody of the Bankruptcy Court without that Court's prior permission is not a levy "validly invoked." No proper levy had been made on the Electricon dividend in the custody of the Quakertown Bankruptcy Court as of the date Electricon went into receivership. Since the levy was not effective and valid at the "date of bankruptcy" [22] of Electricon-Suburban, Inc., it became no more than another debt of the bankrupt Electricon estate once the bankruptcy petition was filed.

■ It follows then that the District Director had only the usual rights of the Government when it proves its claims in bankruptcy. This does not include post-bankruptcy interest. City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949); Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1910). Bruning v. United States, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) does not support the District Director's position. There the Supreme Court allowed post-petition interest on a tax debt "which survives bankruptcy to the extent that it is not paid out of the estate." 376 U.S. at 362, 84 S.Ct. at 908. That holding can have no effect where bankruptcy has frozen an invalid levy rendering it a mere debt and thus bringing it within the "traditional rule, as reiterated in Bruning "which denies post-conviction interest as a claim against the bankruptcy estate." The in-

applicability of Bruning is brought home in its own language:

> The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of post-petition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors.[23]

The difficulties noted in Bruning though absent where the debtor remains personally liable for an undischarged debt, could accrue here where the debtor goes into receivership after there is outstanding a levy invalid for absence of the consent of the Bankruptcy Court in another matter.[24] Thus the dividend was not "assets of the taxpayer seized prior to the filing date of the taxpayer's petition in bankruptcy," as the District Director argues,[25] for the seizure was a nullity. Since the levy was not "validly invoked" as required by United States v. Sullivan, supra, to be effective, it did not effect "a seizure of the delinquent's property tantamount to a transferral of ownership." It follows that this matter must be remanded to the Referee for proceedings not inconsistent with this opinion.

---

22. " '[D]ate of bankruptcy' * * * with reference to time, shall mean the date when the petition was filed; * * *." 11 U.S.C. 1.

23. 376 U.S. § 360–361, 84 S.Ct. 908–909.

24. The argument that the status of Quakertown's assets is irrelevant is without merit. Although Electricon was not in bankruptcy at the time of the levy, the

fact is that the levy was made on funds in the custody of a bankruptcy court. While the regulation relied on to make the levy mentions only the "assets of the taxpayer," its language cannot be taken to override the long recognized protection given to funds of any description in a court's custody.

25. Memorandum of Law for the United States . . ., p. 11.