## ELK DISCOUNT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1818.    Promulgated October 17, 1944.

*Stanley G. Falk, Esq.,* for the petitioner.
*Bernard G. Long, Esq.,* for the respondent.

OPINION.

SMITH, *Judge*: The petitioner concedes that it qualifies as a personal holding company for the calendar years 1938, 1939, and 1940 so far as stock ownership is concerned. The respondent submits that "the only question for determination, therefore, is whether its [petitioner's] income is personal holding company income within the meaning of the law. If the petitioner's gross income, designated 'carrying charges,' is interest within the meaning of the law, it is a personal holding company."

The so-called "carrying charges" do not have reference to any accounting practice of the petitioner. They represent merely the estimated gross profit which the petitioner will make on the transactions—the difference between what the petitioner will initially pay the dealer for the contracts and notes and the gross amounts of installment payments to be made by the buyer of the automobile.

Section 403 of the Revenue Act of 1938 and section 502 of the Internal Revenue Code define "personal holding company income" as meaning:

* * * the portion of the gross income which consists of:

(a) Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties (other than mineral, oil, or gas royalties), annuities.

The respondent contends that the "carrying charges" represent "interest." He cites article 403–1 (2) of Regulations 101, which provides in part: "The term 'interest' means any amounts, includible in gross income, received for the use of money loaned except that it does not include interest constituting rent."

The respondent submits that the facts in this case show that the individual buyer of an automobile was paying the so-called "carrying charges" for the use of the money which the petitioner advanced;

that "The evidence shows that the petitioner was engaged primarily in the business of lending money upon notes signed by individual automobile purchasers secured by liens upon the automobiles in the form of conditional contracts of sale."

We do not think that this contention of the respondent can be sustained. The petitioner was not in the business of lending money. Its business was confined solely to the purchase of conditional sales contracts and notes executed by buyers of automobiles from automobile dealers and the collection of the notes from the makers thereof. The installment payments on the notes were made without the payment of interest, except when they were not made on the due dates. The only interest which the petitioner received was that which accrued and was paid by the makers of the notes where the installment payments were not made on time, and on "floor plan financing," where interest was received from automobile dealers on trust receipts. The interest thus received was negligible in amount and was reported as interest in the petitioner's tax returns.

The position of the respondent appears to be that the petitioner loaned money to prospective buyers of automobiles which is in effect paid by them to the dealers to make up the difference between the down payment and the cash purchase price of the car, and that any amount received by the petitioner from the buyer in excess of such balance constitutes the receipt of interest by the petitioner. We do not think that this position is factually defensible.

In the first place, the buyer is not interested in borrowing money from the petitioner. He is interested only in buying an automobile and paying therefor partly in cash and the balance in installments. There is nothing in the evidence to show that the buyer knows what the cash purchase price of the automobile is.

The petitioner is not a party to the conditional sales contract. It does not come into the picture until after the buyer has entered into a conditional sales contract with the dealer and signs the required note and the petitioner has purchased them from the dealer. Furthermore, when the buyer makes the required installment payments on time no part of the amounts paid constitutes the payment of interest. The buyer is merely paying the purchase price of his car. In I. T. 3254, C. B. 1939–1, p. 98, it is said:

Whether any part of the finance charges paid in connection with the purchase of an automobile should be treated as interest and, therefore, deductible to the extent allowed by section 23 (b) of the Revenue Act of 1938, or should be treated as a part of the cost of the automobile and, therefore, a capital expenditure, is to be determined by the provisions of the contract of sale. (*Henrietta Mills, Inc.,* v. *Commissioner,* 52 Fed. (2d) 931; and *Daniel Bros. Co.* v. *Commissioner,* 28 Fed. (2d) 761.) However, amounts, even though specifically denominated as interest, are not deductible under the provisions of section 23 (b), supra, in situations where it is clear from an examination of the entire contract that such

amounts were intended as a part of the purchase price and were not actually paid as interest. (*Pratt-Mallory Co., Inc.*, v. *United States*, 12 Fed. Supp., 1020; *Appeal of Anderson & Co.*, 6 B. T. A. 713; and *Appeal of Marsh & Marsh, Inc.*, 5 B. T. A. 902.)

Clearly, if the dealer had not sold the conditional sales contracts and notes to the petitioner, but had collected the installment payments himself, he would not have received interest. The petitioner simply steps into the shoes of the dealer when it purchases the conditional sales contracts and notes from the dealer.

It is also to be noted that the so-called "carrying charge" was never intended to represent in its entirety an amount paid for the use of money advanced by the petitioner. It was intended to include substantial amounts which the petitioner had to pay for insurance to protect both itself and the buyer. The buyer was thus relieved from the payment of any insurance on his car until he had paid therefor in full and acquired title. Also, the "carrying charge" included substantial amounts which were in reality a part of the cost to the petitioner of the conditional sales contracts and notes. Such additional cost to the petitioner was represented by the commissions or kick-backs which the petitioner paid to the automobile dealer for his business.

Conditional sales contracts are in the same category as merchandise. The gross profit which a purchaser realizes on such transactions is not to be differentiated from profit on the purchase and sale of other merchandise. A purchaser may not be able to collect the entire amount due under the contract. The petitioner was not able to collect the contracts in full. Its losses on the transactions are reflected in deductions from gross income in the form of additions to a reserve for bad debts.

In our opinion the facts in this case are not essentially different from those which obtained in *Western Acceptance Corporation*, 46 B. T. A. 828, wherein we held that where a taxpayer purchased conditional sales contracts of automobile dealers with customers, assigned them to another for a greater amount, and made collections on them which it transmitted to the assignee, the income so derived was not interest within the meaning of the definition of personal holding company income. The only difference between the instant proceeding and that case upon its facts is that here the petitioner did not act as a go-between between another acceptance corporation and the automobile dealer.

In *Gould* v. *Gould*, 245 U. S. 151, the Court stated:

In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen. * * *

In *Elverson Corporation*, 40 B. T. A. 615, we noted that "The usual import of the term [interest] is the amount which one has contracted to pay for the use of borrowed money," and that "If there were doubt as to the connotation of the term, and another meaning might be adopted, the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer."

We think, in the circumstances of the instant case, the term "interest" can not be enlarged to include the "carrying charges" here in question.

The respondent in support of his contention cites *Noteman* v. *Welch* (C. C. A., 1st Cir.), 108 Fed. (2d) 206. That case involved a Massachusetts corporation which loaned money to individuals under a statute which permitted it to charge "interest and expenses" not to exceed 3 percent per month. The argument was made that a part of the amounts collected from borrowers of money was not interest, but was for examination and investigation fees, etc. The court held, however, that the entire amount was interest. The facts in that case are obviously materially different from those which obtain in the instant proceeding; for here the petitioner simply purchased from automobile dealers conditional sales contracts and notes executed by buyers and made such collections as it could from the buyers.

From a consideration of the entire evidence in this case, we are of the opinion that the respondent erred in determining that the "carrying charges" here in question constituted personal holding company income, and we therefore hold that the petitioner was not a personal holding company for the tax years in question.

Since the deficiency in tax before us is only a deficiency in personal holding company surtax and since we have held that the petitioner was not a personal holding company for the tax years in question, the delinquency penalty determined by the respondent is not due.

Reviewed by the Court.

*Decision of no deficiency will be entered.*

---

MURDOCK, *J.*, dissenting: I think a large part, if not all, of the "carrying charges" was interest within the meaning of the statute. That part which was paid to the automobile dealer as a "kick-back" and the part which was used to obtain insurance can be disregarded, because the remainder, together with admitted interest, was more than 80 percent of the gross income of the petitioner.

The services of this petitioner were called into use only because a prospective purchaser of a car did not have enough cash of his own and had to have the temporary use of the funds of this petitioner in order

to buy the car. The plan was fully arranged in advance under which he actually obtained the use of the funds of this petitioner. Of course he had to pay for the use of those funds. The petitioner in effect discounted the purchaser's note, paying over to the automobile dealer on behalf of the purchaser the amount of the note, less discount, and holding the note until maturity, by which time he had obtained the full face amount of the note, including the discount or the amount received as compensation paid for use of the money loaned. This is within the definition of interest. Although the name is not controlling, the words "carrying charges" used by the petitioner to describe this income would seem to have no meaning at all unless they meant charges made for the carrying of loans to the purchasers of automobiles.

The *Western Acceptance Corporation* case relied on in the majority opinion is distinguishable. Western did not hold the obligations to maturity. It obtained them from automobile dealers and immediately sold them to another company and thereafter acted merely as a collection agency for the latter. Thus, Western did not lend its money. Here the money outstanding during the period of the loan belonged to the petitioner and its profit was compensation for thus allowing its money to be used to purchase the car and to be repaid at a later date. If the purchaser had obtained the money in some other ways, the fact that he was paying for the use of it might be more apparent, but the fact would be the same in all cases.

MELLOTT and OPPER, *JJ.*, agree with this dissent.