## COMMISSIONER OF INTERNAL REVENUE v. PIERCE.

## PIERCE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 37.

Circuit Court of Appeals, Second Circuit.

Dec. 27, 1944.

George J. Laikin, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for Commissioner.

Edwin S. Cohen and Norris Darrell, both of New York City, (Sullivan & Cromwell, of New York City, of counsel), for taxpayer.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Both the Commissioner and the taxpayer appeal from an order of the Tax Court, which expunged in part, and affirmed in part, a deficiency assessment for income taxes against the taxpayer for the year 1940. (The taxpayer has not pressed her appeal before us, and we understand it to be abandoned.) The taxpayer's husband died on March 18, 1940, leaving a life insurance policy in the sum of $100,000, in which he had named her as the beneficiary. The policy first contained an unconditional

promise to pay to the taxpayer on the death of her husband, "the sum of $100,-000," and later provided as follows: "The Insured shall have the right with the privilege of revocation and change, to elect in lieu of payment in one sum either Option 'A', 'B' or 'C', or that the amount payable be distributed under two or more of said Options. The Beneficiary * * * when this Policy becomes payable, shall have the same right and privilege if no such election effected by the Insured shall then be in force." The taxpayer's husband did not during his life elect any of the options, but after his death, in accordance with the language just quoted, the taxpayer elected to take under "Option 'C'," which gave her the right to have the net proceeds of the policy paid "in either 10, 15, 20 or 25 stipulated installments of an amount corresponding in the Table below to the age of the Beneficiary at the death of the Insured, provided that if the Beneficiary shall survive to receive the number of installments selected, similar installments shall be continued during the lifetime of the Beneficiary." She chose to be paid in ten installments: i. e., 120 monthly installments spread over 10 years. At her age each payment came to $597, and they were to continue as long as she lived. To these installments the insurer added such monthly dividends as were declared upon the policy—these being the subject of the taxpayer's appeal. For the year 1940 she received ten installments, aggregating $6,-294, together with nine monthly dividends for $36 each. She did not return any of these as income, relying upon § 22(b) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(b) (1), which excludes from gross income and exempts from taxes the following: "Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income)." The Commissioner assessed a deficiency against her of $2,009.51, which he computed as follows. He divided the principal of the policy—$100,000—by the figure 19.45—that being the taxpayer's expectancy in 1940—this gave a quotient of $5,141.39, of which he took five-sixths—there being only ten monthly payments in the year 1940. The result was $4,284.49, and this he treated as the proper amortiza-

tion payment of the capital sum of $100,-000; the difference—$6,294 minus $4,284.49—he treated as income and taxed accordingly. Upon review by all the judges of the Tax Court, it was held, two judges dissenting, that the taxpayer was right; the deficiency was expunged, except as to the nine dividends already mentioned; and from this order the Commissioner appealed.

Four Circuit Courts of Appeals have held that § 22(b) (1) does not mean to separate such installments as are here in question into principal and interest and to include the interest in gross income; but that it exempts the whole installment. Commissioner v. Winslow, 1 Cir., 113 F.2d 418, 133 A.L.R. 405; Commissioner v. Bartlett, 2 Cir., 113 F.2d 766; Commissioner v. Buck, 2 Cir., 120 F.2d 775; Allis v. La Budde, 7 Cir., 128 F.2d 838; Kaufman v. United States, 4 Cir., 131 F.2d 854. The parenthesis applies to cases where the capital sum is retained for a season undiminished, and only the interest is paid to the beneficiary (United States v. Heilbroner, 2 Cir., 100 F.2d 379); and in economic theory there is no difference between such interest, and the interest concealed in an installment; for, when an insurer pays the beneficiary in a series of installments, it always does add something as interest upon those installments which for the time being it retains. Nevertheless, although for this reason the distinction is to some extent formal, the courts have thought that they saw adequate ground for it in the language used; and the Commissioner, after many unsuccessful efforts, has finally yielded and amended his regulations accordingly (Regulations 103, § 19.22(b) (1)-1). We are, therefore to take it as datum that, if the insured had during his life elected to take under "Option 'C'," the Tax Court would have been right. The Commissioner insists, however, that his earlier position is still valid when, as here, it was the beneficiary, not the insured, who made the choice. The argument is that, since she had the option of choosing between the principal and one of the options, it is as though she had actually received the principal and had reinvested it with the insurer, instead of upon some other security. Were that done, the resulting payments would have to be broken down into earnings and amortization installments, and, qua earnings, would be taxable.

It cannot be seriously argued that, literally at any rate, the installments are not

"paid by reason of the death of the insured"; they are all conditional upon that event, and they begin to be payable at once thereafter. Pro tanto, they are precisely like any other life insurance, all of which is payable "by reason of the death of the insured." We recognize, however, that that is not a final answer; for, granting that the insured's death is a condition precedent, it is not the only condition precedent to the payments in question, as it is when the insured himself makes the choice. If the words should be read: "only by reason of the death of the insured," the meaning would be as the Commissioner maintains; and our decision turns upon whether that is their right interpretation.

The policy offered the beneficiary a choice between rights already in existence, with whose creations she had had nothing whatever to do; they came to her ready made by the insured. To say that her position was the same as though, having the principal in hand, she had exchanged it with the insurer for the option, is untrue in fact and unwarranted in law. Perhaps, if the policy had not contained the options, the beneficiary might still have been able to buy "Option 'C' " from the insurer by a direct bargain; but nothing in the record supports that assumption, and we have no right to make it. Life insurance is a technical subject, and it would be hazardous to say that it made no difference in the beneficiary's powers in dealing with the insurer that the policy contained the options. But even if it did make no difference, it is a fiction to treat the situation as though she had made such a bargain; it is as untrue as it would be to say that if the policy permitted her to be paid in dollars or pounds, and she took pounds, she had bought the pounds from the insurer with the dollars. It is as untrue as it would be to say that, if a testator gives a legatee the choice of money or a chattel and he takes the chattel, he has bought it of the executor. In such situations the beneficiary makes no bargain whatever with the decedent's representative; all that happens is that, not having the power to take both benefits, and being therefore put to a choice, he takes one of those already provided. Nothing will justify the violence to the language necessary to the Commissioner's interpretation, unless it is necessary to effectuate the underlying purpose of the statute. In this instance it would defeat that purpose.

We are to assume that Congress wished to favor the class of dependents in whose behalf life insurance is ordinarily secured —the wife and children of the insured. Although that involves an exemption from taxation and exemptions are viewed with jealousy, when the purpose is evident enough, we should not defeat or mutilate its realization. The proposed distinction does not rest upon any difference in the class who will profit by the exemption; it does not rest upon any difference in the kind of property exempted; it does not rest upon any language in the statute—on the contrary it demands that we import a word which is not there: "only." Moreover, it would make a difference which in practice would impair the underlying purpose. If the Commissioner is right, an insured who has taken out such a policy, and who wishes to give the beneficiary—ordinarily his wife—the power to decide how she will use the proceeds, must consult her in advance, and act while he lives, unless he is willing to forego the exemption. As he cannot tell when he will die, he must make sure that he keeps abreast of all changes in their financial position, and provides for them; he will be unable to give her the power after his death to adapt her means to her needs. True, that extention will be short; she cannot wait long before electing; but at least she has some time within which to act, and this may be extremely important in those cases—which are apt to be frequent—in which through inattention, or through the assumption, common to us all, that death is not at hand, the insured has failed to do what the new situation demanded. For these reasons, as we have said, to import the necessary word would positively defeat the purpose of Congress.

In conclusion, we think that there are one or two analogies, which, while by no means on all fours, nevertheless look in the same direction. When a widow accepts her husband's testamentary provision in lieu of dower, she is held to take under the will, though it is only by performing the condition—releasing the dower—that she can take. Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365. Again, when an heir who contests a will, the contest remaining undecided, settles with the executor, he takes by inheritance, though it is again only by conforming to a condition that he gets his share. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.

Ed. 119, 119 A.L.R. 410. These decisions do not of course declare that the widow, or the heir, takes "only" from the husband or the ancestor; yet they are instances in which we do think of the property as passing only "by reason of" death, although some concurring act of the transferee is necessary. And indeed it is always true of any devise, and of any legacy, that the devisee or the legatee must accept it in order to pass the property. Acceptance is a condition not always fulfilled—as for example, when the testator has attached obligations to it—; yet we should suppose that nobody would hesitate to say of such a devise or legacy that it passed "by reason of the death" of the testator.

Order affirmed.

FRANK, Circuit Judge (dissenting).

We are dealing here with an exemption statute. It is hornbook law that such statutes are to be construed against the person claiming the exemption,[1] and that for a good reason: Every exemption increases the tax burden of other taxpayers, and it is not lightly to be assumed that Congress intended inequality of tax burdens. I think my colleagues, with no support from any legislative history, have here ignored that doctrine. The statute exempts "amounts received under a life insurance contract paid by reason of the death of the insured." Are the amounts here paid "by reason of" such death? Yes, in part; for the contract made by the insured provided that the beneficiary upon the death of the insured should have an option, so that the option came into being "by reason of" his death. But the death alone did not bring about such payment; it required both (a) the death of the insured and (b) the election, after that death, of the beneficiary to exercise the option. The question, then, is this: Did Congress mean (1) "paid in part by reason of the death" or (2) "paid solely by reason of the death"? Because of the doctrine as to tax exemptions, it seems to me that we should hold that Congress meant the latter, i. e., "solely."

Having in mind that, concededly, the amount received by taxpayer was not paid to her solely by reason of the death of the insured, I am persuaded by the reasoning in the dissenting opinion of Chief Judge Lehman in Latterman v. Guardian Life Insurance Company, 280 N.Y. 102, 106-108, 19 N.E.2d 978, 127 A.L.R. 450. Doubtless the death of the insured conferred on the taxpayer, because of the insurance contract, a privilege to make an investment which, but for the death, would probably not have been available to her. But the money is paid by the insurance company not "by reason of the death," but because the beneficiary exercised a deliberate choice to avail herself of the privilege of making such an investment.

I think my colleagues are well advised in stating that the two decisions which they suggest as analogies are "by no means on all fours." In Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365, the taxpayer was defeated; the Court, referring to the familiar doctrine as to tax exemptions, said (290 U.S. at page 369, 54 S.Ct. at page 222, 78 L.Ed. 365): "Certainly, Congress did not intend any income from a trust should escape taxation unless definitely exempted." In Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, to be sure, the taxpayer won. But there the question was whether the taxpayer, an heir, acquired property "by * * * inheritance," when he received it under an agreement compromising and settling his contest of the decedent's will. The Court noted that Congress had already imposed a tax upon the transfer of the entire net estate and said (305 U.S. at page 195, 59 S.Ct. at page 159, 83 L.Ed. 119, 119 A.L.R. 410): "Congress has not indicated any intention to tax again the value of the property which legatees, devisees or heirs, received from the decedent's estate." The Court went on to say that the taxpayer obtained the property "because of his standing as an heir"; pointing out that, if the will contest "had been fought to a finish" and the taxpayer "had succeeded," the property received by him would have been exempt under the statute; the Court said (305 U.S. at page 196, 59 S.Ct. at page 159, 83 L.Ed. 119, 119 A.L.R. 410): "We think that the distinction sought to be made between acquisition

---

[1] See, e. g., Chicago, B. & K. C. R. Co., v. Guffey, 120 U.S. 569, 575, 7 S.Ct. 693, 30 L.Ed. 732; Phœnix Fire & Marine Ins. Co. v. Tennessee, 161 U.S. 174, 177, 16 S.Ct. 471, 40 L.Ed. 660; Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260; United States Trust Co. v. Anderson, 2 Cir., 65 F.2d 575, 89 A.L.R. 994, certiorari denied 290 U.S. 683, 54 S.Ct. 120, 78 L.Ed. 589; cf. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

392

through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it. * * *' Respondent agrees that the word 'inheritance' as used in the federal statute is not solely applicable to cases of complete intestacy. The portion of the decedent's property which petitioner obtained under the compromise did not come to him through the testator's will. That portion he obtained because of his heirship and to *that extent he took in spite of the will and as in case of intestacy."* It seems to me that, as thus explained by the Supreme Court, the rationale of Lyeth v. Hoey is not at all apposite here.[2]

[2] It may well be that, if my interpretation is correct, the case here would come under § 22(b) (2), for it would then be as if the beneficiary had purchased an annuity. The result would be to increase the tax beyond that determined by the Commissioner. But, by his determination, he relinquished that increased amount of tax.