CLARENCE B. JONES AND NANCY BROWN JONES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37031. Filed May 27, 1954.

*Middleton Miller, Esq.,* for the petitioners.
*Paul Levin, Esq.,* for the respondent.

OPINION.

RAUM, *Judge:* The respondent determined deficiencies in income tax against petitioners for the years 1947 and 1948 in the amounts of $298.61 and $83.68, respectively. Petitioners claim overpayments of income tax for those years in the amounts of $46.50 and $25.32, respectively.

The issues are:

(1) Whether payments received by Clarence B. Jones from The Aetna Life Insurance Company during the years 1947 and 1948 were governed by section 22 (b) (1) of the Internal Revenue Code as "Amounts received under a life insurance contract paid by reason of the death of the insured," or whether they were amounts received as an "annuity" within the meaning of section 22 (b) (2).

(2) Whether all or only a portion of the 1947 expenses of operating and maintaining a summer residence, owned by the petitioners and their relatives and rented to others during July and August 1947, were deductible under section 23 (a) (2) of the Internal Revenue Code.

All of the facts are stipulated and the stipulation is adopted as our findings of fact.

The petitioners, husband and wife, reside in Winnetka, Illinois. They filed joint income tax returns for each of the taxable years. Clarence B. Jones will hereinafter be referred to as the petitioner.

*Issue No. 1.*

On June 24, 1924, Walter C. Jones, the father of petitioner, entered into a contract of insurance with The Aetna Life Insurance Company of Hartford, Connecticut. The policy, No. N–434,855, was issued by Aetna on Walter's life, and the petitioner was designated as beneficiary. The policy provided that in consideration of certain stipulated annual premiums, Aetna would pay $15,000 to petitioner in the event that the insured died prior to the end of the endowment term of 12 years from the date of the policy. The policy contained certain provisions giving the insured the right to elect one of three modes of payment of the death benefit.

In his application for the insurance policy, dated June 24, 1924, and again in the correction of application dated October 21, 1924, Walter elected that the $15,000 be paid to the beneficiary, according to the "second" mode of payment, in 180 monthly installments without right of commutation.

Pursuant to the foregoing election, Aetna placed the following endorsement on policy No. N–434,855:

Written election bearing date of June 24, 1924 having been made by the insured as provided in the policy, the net sum payable by the company under this policy as a death claim before the end of the endowment term is hereby made payable in one hundred and eighty monthly instalments, in accordance with the second mode under "modes of paying the insurance," without the right of any personal payee to commute the instalment payments.

Walter died on March 28, 1928. Thereafter, on May 4, 1928, Aetna placed the following endorsement on the policy:

By reason of the death of the insured Walter Clyde Jones and election made in accordance with the terms hereof, settlement of this policy is to be made under second mode by monthly payments.

Upon the death of the insured, Aetna paid to petitioner monthly installments of $106.80 beginning April 9, 1928, pursuant to the election of the insured. Aetna continued to pay such monthly installments to and including February 9, 1933.

In January 1933, petitioner inquired whether Aetna would be willing to make smaller payments to him during his lifetime in lieu of continuation of the installment payments for the balance of the period of 180 months.

On February 9, 1933, the petitioner, then 24 years of age, filed an "Application for an Annuity" with Aetna. In answer to question 3-a of the application, "What is the amount to be paid to said Company as premium or consideration for the annuity?", petitioner answered as follows: "$10,865.05 representing full settlement of all claims under policy No. N–434855, all liability of the Company under said policy being hereby terminated. * * *"

On February 10, 1933, Aetna issued annuity policy No. A–7236 to petitioner. The commuted value of policy No. N–434,855 at that time was $10,865.05.

Policy No. A–7236 provided in part as follows:

THE AETNA LIFE INSURANCE COMPANY of Hartford, Connecticut (herein called the Company)

(1) IN CONSIDERATION of the application for this contract, which application is hereby made a part hereof and a copy of which is attached hereto, and in further consideration of the single premium of TEN THOUSAND EIGHT HUNDRED SIXTY-FIVE and 05/100ths Dollars to be paid to the Company upon delivery of this contract, which delivery shall be a receipt for such premium,

(2) HEREBY AGREES TO PAY FORTY-FOUR & 98/100ths DOLLARS at its Home Office on the tenth day of March, One thousand nine hundred and thirty-three, and it further agrees to pay a like amount at the same place on the same day of each succeeding month until One hundred twenty such payments (herein called the payments certain) in all have been made.

The Company also agrees that if CLARENCE B. JONES of Evanston, County of Cook, State of Illinois (herein called the annuitant), shall be living on the tenth day of March, One thousand nine hundred and Forty-three, it will then make another payment of a like amount at the same place, and will continue making such payments on the same day of each succeeding month during the lifetime of the annuitant; provided, that at every such payment after the payments certain have been made, satisfactory proof shall be furnished to the Company that the annuitant is then living, and that such payments shall terminate with the last payment preceding the death of the annuitant.

From and after February 10, 1933, and throughout the taxable years 1947 and 1948, Aetna paid to petitioner monthly installments of $44.98, totaling $539.76 in each year, no part of which was included in taxable income in returns filed by petitioners.

In determining the deficiencies for 1947 and 1948, the respondent treated the consideration of $10,865.05, recited in policy No. A–7236, as having been paid for an annuity, in accordance with section 22 (b) (2). If section 22 (b) (2) is applicable here, there is no dispute between the parties as to the correctness of the amount added to taxable income by the Commissioner.

The pertinent provisions of the Internal Revenue Code read as follows:

SEC. 22.   GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(1) LIFE INSURANCE.—Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

(2) ANNUITIES, ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the tax-

able year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *

The petitioner contends that the amounts paid to him by Aetna during the taxable years were paid under a life insurance contract by reason of the death of the insured (his father) and are therefore fully exempt from income tax under the provisions of section 22 (b) (1), *supra*. The question before us is whether the payments in question are governed by section 22 (b) (2), as contended by the Commissioner, or by section 22 (b) (1), as contended by petitioner.

The substance of petitioner's argument is that the payments of $106.80 received by him under policy No. N–434,855 were amounts received under a life insurance contract paid by reason of the death of the insured and exempt from tax under section 22 (b) (1), citing *Katharine C. Pierce*, 2 T. C. 832, affirmed, 146 F. 2d 388 (C. A. 2); *Commissioner* v. *Winslow*, 113 F. 2d 418 (C. A. 1); *Allis* v. *La Budde*, 128 F. 2d 838 (C. A. 7); that under the provisions of policy No. N–434,855 petitioner had no right to require, nor could Aetna allow, commutation of the insurance proceeds; that his only right or claim against Aetna was for proceeds of life insurance paid by reason of his father's death; that the annuity of $44.98 per month received under policy A–7236 beginning and subsequent to March 10, 1933, constituted an alternative and equivalent method of settlement available by reason of insurance company practice; and that, inasmuch as the insurance proceeds paid in the manner originally selected by the insured were nontaxable to him, the equivalent payment permitted by the insurance company should likewise be nontaxable.

We do not agree with petitioner. His right to receive any amounts under the life insurance contract by reason of the death of his father ceased when policy No. N–434,855 was terminated on February 10, 1933. While that policy provided that no "personal payee" should have the right to commute the installment payments it did not in fact prevent.Aetna and petitioner from entering into an agreement which had the effect of changing the amount and period of the payments. On February 10, 1933, petitioner in effect accepted $10,865.05, the commuted value of policy No. N–434,855, in full settlement of his claims under that policy, and paid that amount to Aetna, as a single premium on policy No. A–7236, in consideration for Aetna's agree-

ment to make 120 monthly payments of $44.98 beginning March 10, 1933, and for the life of petitioner thereafter. Subsequent monthly payments of $44.98 were received by petitioner solely by reason of the provisions of this annuity policy. It was not a life insurance policy and payments made thereunder were not by reason of the death of the insured. There was no provision anywhere in the life insurance policy for payments extending over the life of the beneficiary. The payments in question were the result of a purchase by petitioner of an annuity. They were "Amounts received as an annuity under an annuity * * * contract" within the meaning of section 22 (b) (2), and the respondent did not err in his determination.[1]

The argument that the insurance company and the beneficiary had no right to enter into the new arrangement would apply with equal force to the new monthly payments over the beneficiary's life regardless of how such payments are viewed, for there was nothing in the original policy that authorized any such mode of discharging the company's obligation under the policy. If the company had paid out the $10,865.05 in cash to the beneficiary, in violation of the terms of the insurance policy, and if the beneficiary had purchased an annuity policy from a wholly different insurance company with such proceeds, there could be no doubt that the periodic payments received thereafter from the second company would be annuity payments under section 22 (b). And there could hardly be a difference in result merely because the same company undertook to sell the annuity policy to the beneficiary in exchange for the commuted value of the insurance policy.

The decision in *Law* v. *Rothensies*, 57 F. Supp. 447, 450 (E. D. Pa.), is squarely in point.[2] We think it is correct, and it will be followed here. See also *Burtha M. Fisher*, 12 T. C. 1028, 1037, affirmed 181 F. 2d 1010 (C. A. 6). We have been cited to no decision to the contrary. The cases relied upon by petitioner involve the exercise of an option provided in the life insurance policy and it therefore could with propriety be held that the payments received were pursuant to the life insurance policy. Here, on the other hand, a new annuity policy was issued, not in accordance with the original life insurance policy, and the payments in question were made pursuant to that new policy.

Congress has distinguished between annuity payments in section 22 (b) (2) and the type of payments covered by section 22 (b) (1). It is our function merely to decide into what category the payments

---

[1] The stipulation of facts shows that Aetna would have undertaken to make similar payments without issuing an annuity policy. However, we need not decide here whether such a shortcut would render section 22 (b) (2) inapplicable. In this case an annuity policy was in fact issued, and the payments here involved were in fact made pursuant to that policy.

[2] *Law* v. *Rothensies* was affirmed on appeal, 155 F. 2d 13 (C. A. 3), but the question of the correctness of the decision with respect to the policies comparable to the one herein does not appear to have been presented to the Court of Appeals.

herein fall. We have no alternative but to hold that these payments are governed by section 22 (b) (2). The monthly payments received under the life insurance policy up to February 10, 1933, and the $10,865.05 commuted value of the life insurance policy were, of course, in substance received tax free by petitioner pursuant to section 22 (b) (1). But when he in effect applied that commuted value to the purchase of an annuity policy the amounts thereafter received by him were annuity payments, and his tax liability with respect to such payments is to be determined by section 22 (b) (2), which explicitly deals with annuities. The theory underlying section 22 (b) (2) is that the annuitant is entitled to recover tax-free his investment in the annuity; and the formula spelled out therein is designed to give effect to that objective. As applied to the facts of this case, the $10,865.05 commuted value of the life insurance policy which petitioner in effect received tax-free under section 22 (b) (1) and reinvested in the annuity would in turn be received tax-free by him over the years under section 22 (b) (2); the formula provided by section 22 (b) (2) is intended to tax only the excess. The question before us is merely whether the annual payments in question qualify as an annuity. Upon the facts here presented, we are satisfied that the issuance of the new annuity policy brought into play the provisions of section 22 (b) (2), with the result that the formula for taxing the excess over the investment in the annuity is applicable.

## Issue No. 2.

During the taxable years 1947 and 1948, petitioner owned a two-ninths interest in a summer residence situated at Gull Lake, Michigan. Petitioner's mother, sister, and brother owned the remaining seven-ninths interest in the property. Prior to the beginning of World War II the property was used by petitioner's mother and members of the family for personal use solely as a summer residence. By the end of the year 1946 the property was no longer used as a summer residence by the petitioner or any of the coowners. Such property was not suitable for and was never used as a year-round residence.

Commencing in January 1945, the property was listed for sale and was continuously so listed throughout the taxable years 1947 and 1948 and subsequent years. In 1949 a contract of sale was made and subsequently forfeited by the purchaser.

During the months of July and August of the taxable years 1947 and 1948 and subsequent years, the property was rented to strangers through real estate brokers pursuant to offers of petitioner and his coowners. The rent received in 1947 was $1,000.

During 1947 petitioner and the coowners paid out $3,235.21 for maintenance and upkeep of the property, including the opening and preparation of the premises for use as a summer residence. Respond-

ent treated one-half of the $3,235.21 as pertaining to the period prior to July 1, 1947, allowing as a deduction only the remaining $1,617.60 which he attributed to the second half of the year. Thus, he allowed an operating loss of only $617.60, two-ninths of which, or $137.24, he allocated to petitioner.[3]

Petitioner urges that he is entitled to deduct his allocable share of all the expenses of operating and maintaining the summer residence during 1947 under section 23 (a) (2) of the Internal Revenue Code,[4] as added by section 121 (d) of the Revenue Act of 1942. Expenses are deductible under this section if incurred "in the pursuit of income or in connection with property held for the production of income." H. Rept. No. 2333, 77th Cong., 2d Sess., p. 46. The Commissioner, on the other hand, contends that the petitioner has not shown that the summer residence was converted to income producing purposes prior to the time it was actually rented on July 1, 1947, and that his determination, that the petitioner and his coowners are not entitled to a deduction for any amount expended for operation and maintenance prior to that time, should be approved.

The burden was on the petitioner to prove the respondent's determination erroneous. He did not sustain this burden merely by showing that the summer residence was listed for sale during the year 1945 and subsequent years. Cf. *Warren Leslie, Sr.*, 6 T. C. 488, 494; *Allen L. Grammer*, 12 T. C. 34; *Charles F. Neave*, 17 T. C. 1237, 1243. However, when this fact is coupled with proof that the property in question was not suitable as a year-round residence, that petitioner and his coowners ceased to use it as a summer residence in 1946, that, in 1947, they engaged the services of real estate brokers to rent it to strangers during the months of July and August of 1947 and subsequent years, and that the brokers were successful in renting it, we think conversion to income producing purposes for all years subsequent to 1946 has been established and that this conversion should not be held to have its inception on July 1, 1947. During 1947 the property was used only for income producing purposes. While some of the 1947 expenditures were made prior to the actual receipt of rental income, they were all a charge against such income and all qualify as amounts "paid or incurred * * * for the production * * * of income,

---

[3] Petitioner erroneously reported in the joint return filed for the taxable year 1947 as net income from such property the amount of $95.64. Petitioner now claims that he sustained a net loss from the operation of such property, deductible from his gross income for the taxable year 1947, in the amount of $496.71.

[4] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
  (a) EXPENSES.—

    *       *       *       *       *       *       *

    (2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

or for the management, conservation, or maintenance of property held for the production of income," under section 23 (a) (2), *supra*. The respondent erred in not allowing the petitioner to deduct his two-ninths share of the total amount expended to operate and maintain the residence during the year 1947. Cf. *Mary Laughlin Robinson*, 2 T. C. 305.

Reviewed by the Court.

*Decision will be entered under Rule 50.*