Louis Gordon & others *vs.* State Tax Commission.

Suffolk. January 8, 1957. — February 11, 1957.

Present: Wilkins, C.J., Spalding, Williams, Whittemore, & Cutter, JJ.

*Taxation,* Income tax; Appellate Tax Board: appeal to Supreme Judicial Court. *Sale,* Conditional sale. *Interest.*

Profits derived from a business of purchasing from automobile dealers for negotiated amounts conditional sale contracts and instalment notes taken by the dealers in time sales of automobiles and including a finance charge and a provision for interest "after maturity," and then collecting the instalments, were taxable as business income under

G. L. (Ter. Ed.) c. 62, § 5 (b), as amended, and not as interest under § 1 (a), as amended. [434, 437, 439]

A question of law not raised before the Appellate Tax Board is not open in this court on an appeal from the board's decision under G. L. (Ter. Ed.) c. 58A, § 13, as amended. [439]

APPEAL from a decision by the Appellate Tax Board.

*George B. Lourie*, for the taxpayer.

*Samuel W. Gaffer*, Assistant Attorney General, for State tax commission.

CUTTER, J.   The taxpayers constitute a partnership (hereinafter called the appellant) engaged in the business of financing the purchase of automobiles under conditional sale arrangements.   In each transaction, the appellant purchases from an automobile dealer a conditional sale contract and an instalment note signed by a purchaser, and then proceeds to collect the instalments.   The conditional sale agreement shows on one line the cash purchase price, the finance charge including insurance premiums on another line, and the "total time price" on a third line.   The accompanying note is stated in the conditional sale agreement not to constitute "payments by the purchaser, but only evidence of the amounts to become due."   The note itself is payable to "Bearer or order" and provides for the payment of a fixed sum in consecutive monthly instalments of a fixed amount each "and *after maturity* with interest at the rate of six per cent per year" (emphasis supplied).   The note contains an acceleration provision.

A person buying an automobile negotiates with the dealer the cash price and also, in the case of a "time" purchase, the finance charge, down payment and amount of each instalment payment.   The dealer, if he does not wish to keep the arrangement himself, then negotiates for its sale (at a price determined by such negotiation) and assigns to the finance company, without recourse or indorsement, the dealer's "right title and interest in and to the . . . contract . . . and the motor vehicle covered thereby."   In some few cases the dealer undertakes, in the event of default, to repurchase the automobile at the cost of the transaction to

the finance company less payments collected by it and (in some instances at least) less also all finance costs.

The appellant seasonably filed a 1954 Massachusetts partnership income tax return, reporting income received during the calendar year of 1953, including as gross interest income for taxation at six per cent (plus surtaxes) under G. L. (Ter. Ed.) c. 62, § 1 (a),[1] certain profits derived from the conduct of its business described above. The appellant paid the tax based on the return. Subsequently the appellant seasonably filed an application for the abatement of a portion of this tax, asserting that it should have treated its profits as business income, taxable at two and one half per cent (including temporary additional tax of one per cent under St. 1953, c. 246, § 2), plus surtaxes, under G. L. (Ter. Ed.) c. 62, § 5 (b), as appearing in St. 1939, c. 486, § 1,[2] rather than as interest income. With its application for abatement, the appellant filed an amended return of its 1953 income. The State tax commission failed to act upon this application within three months and it was treated as denied.[3]

The appellant filed a petition to the Appellate Tax Board which refused the appellant's request for a ruling that the income here in issue was taxable under § 5 (b) as amended and found that the appellant "has failed to prove that the

---

[1] The pertinent provisions of § 1, as amended in respects not here material, read: "Income of the classes described in subsections (a) . . . received by any inhabitant of the commonwealth during the preceding calendar year, shall be taxed at the rate of six per cent per annum. (a) Interest from bonds, notes, money at interest and all debts due the person to be taxed, except from" various sources not relevant here.

[2] The section has been amended recently in respects not here material or applicable. So far as pertinent in considering whether the income here discussed is business income § 5, as in force in 1953, reads: "Income of the following classes received by any inhabitant of the commonwealth during the preceding calendar year shall be taxed as follows: . . . (b) The excess over two thousand dollars of the income . . . derived from professions, employments, trade or business shall be taxed at the rate of one and one half per cent per annum. . . ." Section 5 (e) provides that interest "taxable under section one shall not be taxed under this section." Section 5 (c) relating to certain taxable gains is referred to later in this opinion.

[3] See G. L. (Ter. Ed.) c. 58A, § 6, as appearing in St. 1945, c. 621, § 1, as amended by St. 1953, c. 654, § 24, effective, as provided in § 109, on October 1, 1953.

income in question constitutes income derived 'from professions, employments, trade or business' within the meaning of those words as . . . used in . . . § 5 (b)." From the decision of the Appellate Tax Board in favor of the State tax commission, the appellant appealed to this court. The facts are not in dispute. The issue is whether upon these facts the action of the board, in ruling in effect that the profits of the appellant were "interest" taxable under § 1 (a) rather than business income taxable under § 5 (b), is correct as a matter of law.

1. The appellant's business, in its essential character, is closely similar to the business considered in *Hayes* v. *Commissioner of Corporations & Taxation*, 261 Mass. 134. In that case, the taxpayers were engaged in selling merchandise, mostly clothing, by the use of credit orders. Customers, who signed conditional sale agreements, were given written orders on retail stores. The taxpayers were to pay the storekeeper. The clothing remained the property of the taxpayers until paid for and the customer was to pay interest on all money not paid when due. The taxpayers received from the storekeepers a discount of fifteen per cent from regular retail prices and added ten per cent to the regular store price as a charge to the customers, thus getting both a fifteen per cent discount and a ten per cent additional charge. The commissioner of corporations and taxation there in effect conceded that the discount was business income taxable under § 5 (b) but claimed that the ten per cent charge was interest taxable under § 1 (a). This court said (at page 136) that the ten per cent charge was "a part of the credit price at which the clothing was sold . . . . The principal of the debt was the price which the customers agreed to pay the . . . [taxpayers]; no part of this was interest." The court (at page 137) went on to state that it assumed that the commissioner "could analyze the income from trade and business, and tax so much of it as was interest . . . under . . . § 1" and further said, "Facts may exist showing that a part of the so called price is in reality interest and taxable as such . . . but there is nothing in the reported

facts from which, in our opinion, it can be inferred that the ten per cent advance was income from interest under . . . § 1 (a)." In reversing the decision of the trial judge in that case, the court pointed out (at page 136) that a "tax statute is to be strictly construed. The right to tax must be found within the letter of the law; it is not to be extended by implication beyond the clear meaning of the language used." See also *Commissioner of Corporations & Taxation* v. *Aetna Life Ins. Co.* 328 Mass. 404, 408, and cases cited; *Harry Alan Gregg, Jr. Family Foundation, Inc.* v. *Commissioner of Corporations & Taxation,* 330 Mass. 538, 544–545.

Examination of the original papers in the *Hayes* case shows that there are various differences between the facts in the *Hayes* case and the arrangements in the present case. For example, in the *Hayes* case, the arrangement with the taxpayers for a conditional sale preceded the purchase order given to the storekeeper, whereas, in the present case, the appellant ordinarily does not negotiate with the customer directly but purchases a transaction already arranged between the customer and the automobile dealer. In the *Hayes* case the fifteen per cent discount given to the taxpayer by the storekeeper took the form of a reduction in the price of the merchandise, while in the present case any discount is given in the form of a sale of the transaction by the dealer to the appellant at less than face value.[1] The documents used in the *Hayes* case were simpler than those employed by the appellant, possibly because the amounts involved were smaller. All these differences are formal rather than substantive. In essence, the taxpayers in the *Hayes* case were, and the appellant in the present case is, engaged in a business which is closely related to, if not a part of, the business of selling merchandise. In both cases, the purpose is to

---

[1] In the *Hayes* case, the mark-up of ten per cent above regular store price probably included some charge for credit and delay in payment. Similarly, in the present case the so called finance charge doubtless takes into account the same factors. In each case, it is equally impossible on the record to break the charges into component parts which reveal any specific amount which is clearly "interest" rather than "price" or other expense, such as collection expense or insurance. It may well be that such allocation is always impossible or impracticable in such cases.

relieve a storekeeper or dealer, where a customer wishes to purchase merchandise or an automobile by instalment payments, of the credit risk involved and of the very considerable administrative work involved in collecting the instalments, arranging for enforcement of the sale agreement, and repossessing the item sold in the event of default.[1] These administrative activities are costly as appears from the detail of expenses reported in the appellant's tax return, amounts which might well have been substantially larger if the three taxpayers, members of the appellant, had been salaried employees instead of partners.

Obviously, the transaction involves the use of credit and some portion of each finance charge must be intended as compensation for the use of that credit. Compare *Sayles* v. *Commissioner of Corporations & Taxation*, 286 Mass. 102, 105; *Nichols* v. *Commissioner of Corporations & Taxation*, 314 Mass. 285, 288–304. On this record, however, the appellant has established that, in all matters of substance, it conducts its business in very much the same way in which the business of the taxpayers in the *Hayes* case was conducted. If that case is controlling, it is not necessary for us to decide whether, if this were a case of first impression, we would view the difference between (a) the amount paid by the appellant for the conditional sale agreements purchased and (b) the amount collected as wholly or in part interest.

Taxpayers must plan their courses of action on the basis of tax statutes (and court decisions construing them) as they find them, and have doubtless relied upon the *Hayes* case.[2] The case was decided in 1927 and has stood for nearly thirty years, without any suggestion in the cases in which it has been cited that it was not correct. In the next year following the decision in the *Hayes* case, the commissioner of corpora-

---

[1] In the present case too, the appellant must obviously deal with various matters of insurance relating to the automobile to which the appellant retains a security title and for which insurance an amount is frequently included in the finance charge.

[2] See for references to the *Hayes* case in text authorities Nichols, Taxation in Massachusetts (3d ed.) 474. Barrett and Bailey, Income Taxes, 44, 76, 95.

tions and taxation in his annual report[1] recommended legislation which would have made the statute clearly provide that income of the type here involved was taxable under § 1 (a) rather than under § 5 (b).

The Legislature then declined to act and the statutes have remained for over a quarter of a century, so far as here relevant, without any such change as was then proposed.

Even though undue significance should not be given to the mere silence of a legislative body (compare *Oklahoma Tax Commission* v. *Texas Co.* 336 U. S. 342, 367), this history is entitled to some weight. Compare *Welch* v. *Commissioner of Corporations & Taxation*, 309 Mass. 293, 299–300. Obviously the income in question has some characteristics both of interest and of business income (see *Goldman* v. *Tax Commissioner*, 230 Mass. 554, 556), and the Legislature would naturally have given clear indication[2] of its desires, if it had wished to alter the rule in the *Hayes* case for the future.

We must give weight also to the doctrine, mentioned in the *Hayes* case, that tax statutes are to be strictly construed, and to the further doctrine that "all doubts are to be resolved in favor of the taxpayer" (*Bolster* v. *Commissioner of Corporations & Taxation*, 319 Mass. 81, 85). Having these principles in mind, we cannot, on substantially similar facts, reach a different result from that in the *Hayes* case.

Support for the construction of the statute here continued

---

[1] The annual recommendations of the commissioner of corporations and taxation for 1928 legislation (1928 House Doc. No. 125, page 5) referred to the *Hayes* case and, after quoting from the opinion (including the language of the court which suggested that part of the so called price might be taxable interest), and contending that the record in that case was not clear, proceeded, "In order to correct this situation, and to bring the statute in line with what has been the practice in the administration of the income tax law since 1917, an amendment is suggested to section 1 . . . providing that a tax be laid upon that which is received for the use of money or credit." The bill submitted, 1928 House Doc. No. 133, would have added to § 1 (a) the words "including all value received for the use of money or credit." A report, "no legislation necessary," was accepted by both houses early in the 1928 session (House, January 18; Senate, January 24).

[2] Compare the explicit change by St. 1918, c. 150, now found in cl. Fourth of § 1 (a), of the result in the *Goldman* case, holding pawn brokers taxable under what is now § 1 (a).

is found in certain decisions under the Federal income tax law. Income of the type now under consideration has been held not to be "interest" for the purposes of the personal holding company taxing sections. Internal Revenue Code of 1939, § 502. Internal Revenue Code of 1954, § 543 (a) (1). *Elk Discount Corp.* v. *Commissioner of Internal Revenue,* 4 T. C. 196, 200–203 (where the facts were closely, but not entirely, similar to those in the present case). *Automobile Securities Co.* v. *Maloney,* 42–2 U. S. T. C. par. 9601 (D. C. Ore. June 27, 1942). Compare *Southeastern Finance Co.* v. *Commissioner of Internal Revenue,* 4 T. C. 1069, 1083–1086, affirmed 153 Fed. (2d) 205 (C. C. A. 5). See also rulings and cases where deduction by the purchaser of finance charges as interest has been denied. I. T. 3254, 1939–1 C. B. 98.

The appellee invites our attention to decisions under G. L. (Ter. Ed.) c. 140, §§ 96–114 (small loans regulation), dealing with the purchase at a discount of conditional sale contracts and notes with a balance due of less than $300, where the discount resulted in a financing cost at a rate in excess of twelve per cent per annum. *Modern Finance Co.* v. *Holz,* 307 Mass. 281, 284–286. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183, 187. Compare *Skinner* v. *Kapples,* 320 Mass. 269, 270. It is argued that these decisions in essence hold a discount of the type here involved to be interest. The cases just cited arose under a wholly different statute, enacted for a different public purpose. Section 96 expressly provides that the "buying or endorsing of notes . . . shall be considered to be engaging in the business of making small loans." This express provision may in effect equate the discount to interest for purposes of the small loans statute, but, as has been noted already, no comparable provision has been enacted with respect to G. L. (Ter. Ed.) c. 62, § 1 (a), or its predecessor statutes, either before or since the *Hayes* case. The cases are distinguishable.

2. Although the pleadings raise only the question whether the profits of the appellant's business are taxable as interest

or as business income, it was suggested at the argument that the income here in question, even if not taxable as interest under § 1 (a), is taxable as the "excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property" under G. L. (Ter. Ed.) c. 62, § 5 (c), as appearing in St. 1935, c. 481, § 1.[1] This question was not raised by the pleadings, nor is there any indication in the record that it was presented in any form to the Appellate Tax Board. It is not properly before us. General Laws (Ter. Ed.) c. 58A, § 13, as appearing in St. 1933, c. 321, § 7, as amended, prescribes in great detail the method and scope of appeals from the Appellate Tax Board. It provides, among other matters, that the "court shall not consider any issue of law which does not appear to have been raised in the proceedings before the board." See *Assessors of Worcester* v. *Knights of Columbus Religious Educational Charitable & Benevolent Association of Worcester*, 329 Mass. 532, 534.

3. Abatement is to be granted in the amount, $7,034.05, by which the tax paid by the appellant under § 1 (a) exceeds the tax payable under § 5 (b), with costs.

*So ordered.*

---

[1] The section has been further amended in respects not here material.