ELEANOR W. ALLEN *vs.* STATE TAX COMMISSION.

Suffolk.    April 8, 1958. — May 7, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Taxation,* Income tax.  *Interest.  Insurance,* Life: payments to beneficiary.

Fundamental canons of construction of a taxing statute are that the statute is to be strictly construed, that all doubts are to be resolved in favor of the taxpayer, and that the right to tax must be found within the letter of the law and not by implication.  [504]

No part of an annual payment made under a life insurance policy to the named beneficiary following the insured's death was taxable to the beneficiary under G. L. c. 62, § 1 (a), as interest from "money at interest and all debts due the person to be taxed" where the policy provided and the beneficiary at the insured's death elected an option to receive, instead of the face value of the policy immediately in cash, a larger sum by a stipulated number of equal annual payments computed on an actuarial basis taking into account the interest which the insurer expected to earn annually on the unpaid balance of the face value of the policy, but without clear segregation by the insured and the insurer in the policy of any portion of such annual payments as interest.  [506–507]

APPEAL from a decision by the Appellate Tax Board.

*J. Sidney Stone,* for the taxpayer.

*Edward F. Mahony,* Assistant Attorney General, for State Tax Commission.

CUTTER, J.    The taxpayer (hereinafter called the beneficiary) was the widow of Frank G. Allen (hereinafter called the insured) who died in 1950.  She was the beneficiary named in a policy of life insurance upon the insured's life in the face amount of $100,000.  When the proceeds became payable upon the insured's death, the taxpayer became en-

titled to elect either (a) to receive immediately in cash the face amount (plus a small prepaid premium) or (b) to receive settlement under any one of the three stated options set out in the margin.[1] Further provisions of the policy are also described in the margin.[2] The beneficiary elected settlement "in accordance with . . . Option #2 . . . by 20 annual payments of . . . $6,847.08 . . . beginning October 9, 1950," with the proviso that, in the event of her death, "the balance of said payments remaining unpaid shall be commuted and paid in one sum" to her executors or administrators.

The insurance company made a first payment of $6,847.08 in 1950. The beneficiary did not include any part of this sum in her Massachusetts income tax return of income received by her in 1950. The State tax commission (hereinafter called the commission) assessed the beneficiary for a deficiency of $135.85 based upon the omission from her return of $1,810.98 of the first payment, claiming that this $1,810.98 was interest on indebtedness within subsection (a) of G. L. c. 62, § 1, which at all times here relevant provided for a tax "at the rate of six per cent per annum" on "[i]nterest from bonds, notes, money at interest and all debts due

---

[1] The options were as follows:

"Option 1 — Proceeds left on Deposit. The net sum payable may be left on deposit with the Company, and the Company will pay interest thereon at not less than three and one-half per cent per annum. Payment of the sum left on deposit will be made under such conditions as may be agreed upon when the option is elected.

"Option 2 — Limited Income. Equal payments for a stipulated number of years as set forth in the following table: . . . [Here follows a table of equal payments for each $1,000 of the net sum payable.]

"Option 3 — Life Income. Equal payments for a stipulated number of years and thereafter as long as the payee shall live, the amount of such payments to be based upon the age at nearest birthday of the payee at the date of maturity of the policy. . . . [Here follows a table of such payments.]"

[2] Under Option 2 or Option 3, if chosen by the beneficiary, but not if selected by the insured, it is provided that the "beneficiary shall have the right to . . . commute any stipulated payments remaining unpaid . . . upon the basis of interest at three and one-half per cent per annum." The policy also provides: "If any settlement option becomes effective, this policy will be exchanged by the Company for a supplementary certificate which shall provide for settlement in accordance with the terms of the option elected, and which shall further provide that upon funds left on deposit under Option 1, or funds held for payment of stipulated payments under Option 2 or 3, there shall be paid such share of interest earned in excess of three and one-half per cent per annum as the Company may from year to year determine."

the person to be taxed" with certain exceptions not here pertinent. The commission "divided the total payments to be made, $100,722 by twenty, the number of payments. The quotient $5,036.10 deducted from . . . $6,847.08 gives . . . $1,810.98 which" the commission claims is taxable under the quoted provisions of § 1 (a).

The tax of $135.85 with interest of $17.37 was paid. An application for abatement was denied and the beneficiary perfected an appeal to the Appellate Tax Board. The board also denied an abatement, holding that "the excess over the face amount of the policy paid annually to the appellant is the amount fixed by the parties for the use of the cash retained by the insurer and constitutes a receipt of 'interest' from a debt due the . . . [beneficiary] which is taxable under . . . § 1 (a)." The beneficiary has appealed from the board's decision.

1. This court has recently considered the question of what constitutes interest under § 1 (a). *Gordon* v. *State Tax Commission*, 335 Mass. 431, (profits realized by a finance company purchasing a conditional sale transaction from a dealer held not to be interest). In the *Gordon* case (at page 437) weight was given "to the doctrine . . . that tax statutes are to be strictly construed, and to the further doctrine that 'all doubts are to be resolved in favor of the taxpayer'" and (at page 435) to the principle that the "right to tax must be found within the letter of the law; it is not to be extended by implication beyond the clear meaning of the language used."

The *Gordon* case and the present case both obviously present instances of payments the amounts of which, in a general sense, in part are determined by the fact that the payment of money owed is being delayed, but without any allocation by the parties of any specific part of the payment as a consideration and compensation for the retention of the money and delay in payment. In the present case, for example, the amount of the delayed payments is undoubtedly computed on an actuarial basis which takes into account the interest, at the rate of at least three and one half per

cent per annum, which the insurer expects to earn on the unpaid balance of the face amount of the policy. It was held, in effect, in the *Gordon* case, in the light of the earlier case of *Hayes* v. *Commissioner of Corporations & Taxation,* 261 Mass. 134, and of the canons of construction of tax statutes already mentioned, that § 1 (a) exhibited no clear legislative intention to tax any unsegregated portion of the payments there involved. The present problem similarly must be considered in the light of the fundamental canons of construction just mentioned.

2. We have not been referred to any prior decision of this court under § 1 (a) which is determinative of the present case. The beneficiary, however, contends (1) that the precise matter has been dealt with under the closely comparable provisions of § 22 (b) (1) of the Internal Revenue Code of 1939,[3] and (2) that we should follow the decision in *Commissioner of Internal Revenue* v. *Pierce,* 146 F. 2d 388, 389 (2d Cir.) in which the court (per Learned Hand, J.) held that § 22 (b) (1) did "not mean to separate . . . installments . . . [payable monthly under a provision similar to that in the present case] into principal and interest and to include the interest in gross income; but that it exempts the whole installment" even where, at the death of the insured, "it was the beneficiary, not the insured, who made the choice" of option. The court rejected the "argument . . . that, since she had the option of choosing between the principal and one of the options, it is as though she had actually received the principal and had reinvested it with the insurer, instead of upon some other security." See to the same effect *Law* v. *Rothensies,* 155 F. 2d 13, 14 (3d Cir.);

[3] This provision of the Internal Revenue Code of 1939, 26 U. S. C. (1946 ed.) § 22 (b) (1), 53 Stat. 10, provides in part for the exemption from taxation of: "Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income)." Somewhat changed provisions are found in the Internal Revenue Code of 1954, § 101, dealing with the same subject matter. See Prentice-Hall, Federal Taxes, 1958, pars. 8572 et seq., 8585, 8597. See also the regulations under the 1954 Code, §§ 1.101–1, 1.101–4, which adopt, but on the basis of explicit new statutory language in the 1954 Code, a rule for partial taxation of instalment payments somewhat comparable to that here urged upon us by the commission.

*Bullard,* 5 T. C. 1346, 1349. See also Hilgedag, Life Insurance Planning for Estate and Gift Taxes, 5 N. Y. Univ. Inst. Fed. Taxation (1946) 25, 48–51; Mertens, Federal Income Taxation, §§ 6A.01, 7.03–7.06. Compare *Hall,* 12 T. C. 419, 423–428; *Strauss,* 21 T. C. 104, 110–111; *Jones,* 22 T. C. 407, 411.

We have recently pointed out that in construing the Massachusetts income tax law (G. L. c. 62) decisions under the Federal income tax statutes must be used with caution in view of the very different character of the two taxes. *Second Bank-State Street Trust Co.* v. *State Tax Commission, ante,* 203, 211–212. Here the language of the Federal statute is not precisely the same as that of the Massachusetts statute, and the Federal cases deal, to a considerable extent, with the construction of what constitutes amounts "received under a life insurance contract" within § 22 (b) (1) quoted, *supra,* in footnote 3, rather than what is interest. Many aspects of the problem, however, are the same and the conclusions reached in the Federal cases are persuasive. What the beneficiary here receives is a payment as a result of a contract made with the deceased insured to pay her, at her option, either the face value of the policy at death or payments over a period of time in accordance with any one of the three options. What she received is the payment by one method of a debt which she could collect in four different ways. As Judge Hand points out in the *Pierce* case (at page 390), "The policy offered the beneficiary a choice between rights already in existence, with whose creations she had had nothing whatever to do; they came to her ready made by the insured." It may well be that, if she had accepted the first option, there would have been a sufficiently clear segregation of the item of interest, so that she would have received it as such, that is, as compensation for the detention of money. See *Nichols* v. *Commissioner of Corporations & Taxation,* 314 Mass. 285, 289. Having elected Option 2, however, there is no such segregation and the payments take at least the form of the payment of an obligation of the insurer to pay a series of

principal amounts. Even though (see the *Pierce* case, page 389) "in economic theory there is no difference between . . . interest [where the principal sum is retained under Option 1 by the insurer undiminished], and the interest concealed in an installment" paid under Option 2, the segregation has not been made by the insurer and the insured in the policy.

Nothing in the statute expressly authorizes the commission to make the segregation for the parties. Certainly no part of each payment constitutes interest "from bonds [or] notes" under § 1 (a), nor do we think that any sum is set aside by Option 2 as interest "from . . . money at interest and all debts due the person to be taxed" within the meaning of § 1 (a). Nor is the commission helped by the fact (see footnote 2, *supra*) that the beneficiary at her option may commute future payments "upon the basis of interest at three and one-half per cent per annum." This privilege of commutation is in effect merely a further option, or a subsidiary feature of Option 2, and does not affect her absolute right to each of the payments provided under Option 2. We find no clear statutory mandate that a tax shall be laid upon any specified portion of each individual payment.

Three further considerations lend support to our conclusion. (1) On the theory adopted by the commission, the annual amounts claimed to be taxable as interest would remain fixed during the period of the instalment payments, notwithstanding the fact that the balance of principal proceeds in the hands of the insurer would be constantly diminishing. If a portion of each payment had been intended to be regarded as interest, such portions would presumably steadily diminish in amount as the principal remaining unpaid was reduced. (2) The Legislature has never imposed an inheritance tax under G. L. c. 65 upon life insurance proceeds passing to a beneficiary by reason of the death of the insured. *Tyler* v. *Treasurer & Receiver General*, 226 Mass. 306, 309. *Welch* v. *Commissioner of Corporations & Taxation*, 309 Mass. 293, 298. Where the right to elect to receive payments under Option 2 arises by reason of death,

accrues at the insured's death, and is not then taxed under c. 65, it would take very clear legislative language to lead us to hold that any part of the later payments, to which the beneficiary became absolutely entitled at the insured's death as principal amounts, was intended to be taxed under c. 62, § 1 (a).  (3) When in the Internal Revenue Code of 1954 (see footnote 3, *supra*) the Congress decided to tax the increment in such instalments based on an actuarial computation of an interest factor, thus changing the rule in the *Pierce* case, very explicit statutory language, supplemented by regulations, was regarded as necessary to reach the result. If a tax is to be imposed, under G. L. c. 62, § 1 (a), on this actuarial increment in this type of insurance instalment, we think it should await a specific statement of legislative intention to do so similar to that found in the 1954 Code.[4]

3. Abatement is to be granted in the sum of $153.22 with costs.

*So ordered.*

---

[4] The parties have not brought to our attention any relevant legislative history nor have they introduced in evidence any administrative construction of, or departmental regulations under, § 1 (a) in force at any time during the forty-two years since its enactment, which would tend to support the imposition of the tax here assessed.  See *Second Bank-State Street Trust Co.* v. *State Tax Commission, ante,* 203, 211.  See also cases cited in *Blanchard's Case,* 335 Mass. 175, 179 note 1.

